**EGLANTINE KNOWLES, Plaintiff**

v.

**DUPONT KNOWLES, Defendant**

Civil No. 396-1971

District Court of the Virgin Islands

Div. of St. Croix

February 15, 1973

**YOUNG,** *Judge*

MEMORANDUM OPINION AND SUPPLEMENTAL DECREE

This action was heard on November 6, 1972. At the conclusion of the hearing, both parties were granted divorces on the ground of incompatibility of temperament by a decree dated as of November 7, 1972. In that decree, I reserved decision as to the property rights of the parties and requested memoranda from counsel as to the jurisdiction of this Court to adjudicate any property rights in real property. More particularly, this case presents the question of whether the court can order the husband to transfer to his ex-wife all or part of the real property which he currently possesses in his own name. There were memoranda filed and I did hear argument of counsel on that issue. I now hold that the court can enter such a decree, although in deciding whether to do so, it will be

guided by the equitable considerations which are usually considered in a divorce action. However, to ensure the validity of a decree that makes a disposition of real property in a divorce action, I will first order the husband to pay, within a period of time, a single sum as alimony in gross. At his option, this payment may be fully satisfied by a transfer and conveyance to the wife of a legal share in the subject property.

I

In this first section, I will examine the equities of the case. These indicate that a property division would be the most appropriate method of settlement. This in turn indicates that a power to transfer real property is, in at least some cases, a desirable incident of divorce jurisdiction; and thus if a statutory construction can reasonably justify this result, it should be favored. But to begin with the equities, the parties here were married for approximately ten years and there have been four children born of the marriage ranging from two years of age to nine years of age. Plaintiff (wife and mother) and defendant (husband and father) were a working couple. She worked for the Government and a hospital and he worked for a heavy equipment and construction firm. His income was approximately half again as much as hers, perhaps double if we consider overtime pay which he received from time to time.

After they had been married for approximately five years they purchased a lot in a subdivision of Estate Peter's Rest. The lot cost $2,750. Thereafter they constructed a home on the lot and lived in the home until the spring of 1971 when they separated for the third and final time. Plaintiff moved out of the house and is living in a rental home with the four children of this marriage and one child which she had with another man prior to

this marriage. The husband also moved out of the house and has rented the house on a month-to-month tenancy for the sum of $425.00 per month.

During the trial, plaintiff asked for pendente lite relief for support and for return of certain household equipment which she needed in order to maintain the home for herself and the five children. Pursuant to that request, which was supported by testimony and an affidavit, the court ordered defendant to turn over to her the washing machine, dining room set, refrigerator and phonograph, and to pay to the plaintiff the sum of $40 per week for the support of the children.

There was testimony and documentary evidence such as receipts in support of plaintiff's contention that she paid for the refrigerator, washing machine and other equipment ordered to be turned over to her. There was also some evidence that she paid some of the installments on the land and on the construction and mortgage for the house. However, defendant testified that whatever monies she paid on the house and on the personal property was given to her by defendant and that she never actually used her own money in acquiring either the personal property or the real estate.

In my consideration of the equities involved in this case I do not feel that it is important to have an exact accounting between husband and wife and to try to determine just who paid for what and how much. I regard this husband and wife relationship as a working team where they both contributed in supporting and keeping up the family and in acquiring certain properties, including the homestead. The husband had a greater income, so naturally he contributed more money to the home. On the other hand, the wife contributed perhaps more time to the care and maintenance of the home and of the children.

It is obvious from plaintiff's complaint that she and her attorney assumed that the property had been purchased jointly and that it was in the names of the parties as tenants by the entirety. It was only when plaintiff read the answer that she learned that the property was conveyed solely to the defendant as his sole property. According to the defendant's answers to interrogatories, his appraisal of the present value of the property is $40,000. However, the property is subject to an outstanding unpaid mortgage balance of approximately $18,000. Defendant pays $206.00 per month in equal monthly amortization payments of the mortgage, principal and interest. Therefore, the rent from the house more than covers the mortgage payments, as well as taxes, insurance and maintenance.

The equities in this case with four children of the marriage, ten years of marriage, both parties working and contributing to the family expenses and acquisitions, dictate that I divide the real property for them to share and share alike. The property should probably have been acquired by them as tenants by the entirety, at least plaintiff thought it was so being acquired, and had it been so acquired, the divorce decree would automatically change the tenancy by the entirety to that of tenants in common, each with an undivided one-half interest. By this Supplemental Decree, I may accomplish what I think should in justice be done when two people dissolve their marriage after having lived and worked together and sharing the responsibilities of a family, i.e., either that each has an undivided one-half interest in the marital home or failing that, that the equities be apportioned equally by the payment of a lump sum from the title owner spouse to the other in lieu of any transfer of an interest in the homestead.

364

It is my opinion that defendant should convey to plaintiff a one-half undivided interest in Plot No. 112 of Subdivision of Parcel 9 of Estate Peter's Rest, subject to the present mortgage encumbrance thereon. The parties should then be jointly and equally responsible for the mortgage payments, taxes, insurance and maintenance and they will share the rental income from which to do this. With regard to the personal property and furniture, it shall be my order that defendant shall turn over to plaintiff the washing machine, refrigerator, phonograph and dining room set. However, if the refrigerator and dining room set are being used by the tenants as part of a furnished house rental, plaintiff should then leave such equipment in the house for such use, but she may take from the house the phonograph and washing machine which are pieces of equipment normally not included in a furnished house inventory. Defendant shall have the ownership of the 1970 Ford Torino.

## II

While the foregoing appears to be the most desirable outcome for this case, it remains to be examined whether it is within the powers of this court. Initially, it seems clear that a power to transfer real property is not an automatic incident to divorce jurisdiction. Monetary grants of alimony, which are recognized in the Virgin Islands, might be deemed a sufficient guarantee that a divorced wife will not be left destitute. A further power over real property may therefore be conferred only by statute; it should not be implied by the court. See Lopez v. Lopez, 112 A.2d 466, 206 Md. 509 (1955); Emery v. Emery, 200 P.2d 251 (Mont. 1948); 24 Am.Jur.2d § 926; cf. Cross v. Cross, 125 N.E.2d 488 (1955); Miller v. Miller, 126 P.2d 357 (1942).

■■ I find, however, that there is such an explicit statutory authority in the Virgin Islands. 33 V.I.C. 2305 discusses the concept of the "homestead". Subsection (a) defines the term to mean an abode actually owned and occupied by a person or his family. Subsection (d) then provides in pertinent part that—

> . . . in the case of a divorce, the court which grants it shall make disposition of the homestead in accordance with the equity of the case.

The method of property settlement is a remedy distinct from, and supplemental to, the alimony powers conferred by 16 V.I.C. § 109(3). Unlike alimony, it proceeds on the basis of "the equities" rather than under the somewhat less flexible standard of recovery from "the party in fault". It is also unlike alimony in that it represents a limited and one-time obligation. It should, therefore, be seen as an additional procedure available in divorce actions.

■ I believe this provision will apply to all residential property which meets its terms. It is true that section 2305, in general, is concerned with exempting homesteads from a portion of the real property tax. The homestead exemption, for this purpose, is limited in dollar amount and must in any event be specifically applied for from the Government. But the "homestead" itself, upon which the exemption may be based, seems to denote a wider concept. The homestead exists in any personally owned and occupied residence, regardless of whether the corresponding tax benefit is sought or obtained. A homestead may thus come within the purview of the divorce court without reference to its size or tax status. See Barham v. Barham, 202 P.2d 289 (Calif. 1949) (en banc); cf. Smith v. Smith (Civ. No. 396/1971) (Div. of St. Thomas & St. John).

There is one difficulty with this construction of subsection 2305(d), but it is a substantial one. The section

appears in the Title on "Taxation and Finance", and its general import is to provide a measure of tax relief to homeowners. It might thus appear an anomalous place to locate a provision on divorce-court jurisdiction. This is particularly true when the total content of subsection (d) is considered. That subsection is primarily concerned with determining who shall receive the benefit of the tax exemption if the original owner dies or departs.[1] It might therefore be argued that the language upon which I rely has only a narrow meaning, and in fact authorizes the divorce court only to determine which spouse shall receive the continued benefit of the tax exemption.

For a number of reasons, however, I believe that my construction is the proper one. First, by its terms this section empowers the court to make disposition of the "homestead"—meaning the abode itself—rather than of the "homestead exemption." Since these two terms are defined and used with particularity elsewhere in the same section, we should not assume that this is a mere linguistic lapse. Secondly, if this were held to be only a linguistic error, then the provision would make little sense. A divorce court need not determine which of the separating spouses should retain the tax exemption, since upon separation each party, once he acquires property, would by definition establish an exemptible homestead of his own. Such a provision might serve a purpose in the case where the wife is permitted to remain in possession of the house and where the husband, now an owner not in occupancy, should

---

[1] Subsection (d), 33 V.I.C. § 2305 provides as follows:

(d) The homestead protection and exemption provided in this section shall continue to attach to the property after the death of the owner thereof, and shall inure to the favor of the surviving spouse while the latter continues to occupy the said homestead, and after the death of both spouses, to the favor of their children until the youngest surviving of these shall have attained majority. In case either spouse shall abandon the home, the homestead protection and exemption shall continue in favor of the spouse who occupies the property as a dwelling; and in the case of a divorce, the court which grants it shall make disposition of the homestead in accordance with the equity of the case.

367

be allowed the continued tax benefits from which his absence would otherwise bar him. But this situation assumes the very proposition for which I am now contending —that the divorce court has power to transfer a property interest, in this hypothetical a life estate or a term of years, from one spouse to the other. Thirdly, the local Rules of Construction provide that the location of a provision within the Code is not determinative, and that it should not defeat an otherwise clear substantive provision which may have simply been assigned to an improper Title.[2]

Finally, I refer back to the equities of the case sub judice, which persuade me that a power to transfer real property is a desirable incident to divorce jurisdiction. Such policy considerations, I believe, justify resolving any remaining doubt in favor of finding that the legislature probably intended to grant this power. For example, the additional power would help prevent unequal treatment of couples whose assets are in real property, vis-a-vis those whose are in cash or stocks. It can work to the advantage of both spouses, since satisfaction of a money judgment may require selling the house or other realty during a period of unfavorable market conditions. In many instances it will also prevent injustice to the wife, since property for which they both worked is often placed solely in the husband's name for tax reasons. The wife is frequently unaware of this, and the fact that she may be asked to co-sign the mortgage tends to confirm her in the belief that she possesses a joint tenancy. More generally, the addition of the new power in the divorce court will permit more complete and flexible relief. For such reasons as

---

[2] 1 V.I.C. § 44 provides as follows:

> The classification and organization of the titles, parts, chapters, subchapters, and sections of this Code, and the headings thereto, are made for the purpose of convenient reference and orderly arrangement, and no implication, inference, or presumption of a legislative construction shall be drawn therefrom.

these, a number of other jurisdictions have empowered transfers of the homestead incident to divorce. See Am. Jur.2d, Divorce & Separation, § 926; C.J.S., Divorce § 294(6). And finally, there is precedent in the Virgin Islands for legislative grants to one spouse of an interest in the property of the other, which may be asserted even during the lifetime of the owner of record. See 2 Mun. Ord. St. Croix Ch. 15 § 15.

### III

Although I might be content to rest a decision on the foregoing considerations, I must confess that at least some doubt remains as to two issues. First, can the "homestead" clause properly be applied on the facts of the present case? And secondly, is my construction of this clause correct in any event? In view of the latter question especially, my decree will be qualified to give Mr. Knowles an alternative means of discharging his obligations which will be within the undoubted authority of the Court.

I believe that the property in this case is properly denominated a "homestead." The house is admittedly being rented to third persons and is not presently occupied, as apparently required, by either spouse. The house was, however, used as the marital abode until the parties ceased living together. I do not think it should lose its character as a homestead merely because it is now too large for an individual spouse and is being put to income-producing use pendente lite.

In view of the ambiguity of the homestead statute, however, I will permit the husband a second option. I realize that my decision to dispose of the homestead involves mooring close to the rocks and shoals in the channel to the appellate court, and so it seems prudent to set an anchor to windward. Were this decision to be followed in subsequent cases here, but ultimately reversed on appeal, it

might cloud a number of real estate titles. I will therefore make a practice of also permitting the transferor spouse to pay a lump sum equal to the value of the property which the transferee spouse would receive.[3] This would constitute an alimony in gross, which it is within the unquestioned power of the court to grant. See 16 V.I.C. § 109(3). If the lump sum payment is not tendered within a given period, then, by the alternative provision of the decree, the titleholder will be ordered to transfer the corresponding interest in the property. The transfer may thus be seen as the functional equivalent of a judicial sale, and as an alternative means of securing compliance with the decree for alimony in gross.

## SUPPLEMENTAL DECREE

Supplementing the Decree entered November 7, 1972, defendant is hereby

ORDERED, to pay to plaintiff within sixty (60) days from the date hereof the sum of $10,000 as alimony in gross. However, at defendant's election, he may opt to transfer and convey to plaintiff by quitclaim deed an undivided one-half interest in Plot 112 (0.257 U.S. acres) of Parcel 9 of Estate Peter's Rest, St. Croix, Virgin Islands of the United States, together with all tenements, hereditaments and appurtenances thereunto belonging including the house constructed and located thereon, subject only to restrictions, agreements and conditions of record, including the lien of the mortgage presently encumbering the property held by Chase Manhattan Bank. Plaintiff will be responsible equally with defendant for all future payments of principal and interest falling due on the mortgage; and it is further

---

[3] The sum in this case will be $10,000. Although the property has a current value of $40,000, it is encumbered by a mortgage for $18,000. Defendant's equity is therefore $22,000. Allowing for expenses and possible loss upon sale its realizable value is approximately $20,000, of which the wife's half would be $10,000.

ORDERED, that if defendant transfers an undivided one-half interest in the real property in lieu of paying the gross alimony of $10,000, then the parties shall jointly and equally collect the rents from said property out of which they shall pay the mortgage installment payments, real property taxes, and other expenses until such time that the present mortgage shall be fully paid and satisfied. They shall thereafter continue to share the income and expenses equally as tenants in common; and be it further

ORDERED, that plaintiff shall be entitled to ownership of the refrigerator, washing machine, dining room set and phonograph, but shall leave the refrigerator and dining room set within the premises if they are presently being rented as part of a "furnished house" rental. Defendant is awarded the sole use and ownership of the automobile which is presently in his name and shall have ownership of the remaining personal property now located within the premises.