MEDINA ROGERS, Plaintiff

v.

EDWARD ANDREW ROGERS, Defendant

Family No. 153-77

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

December 16, 1977

MARIA TANKENSON HODGE, ESQ., St. Thomas, V.I., *for plaintiff*

JAMES R. COLEMAN, ESQ. (GRUNERT, STOUT, HYMES AND MAYER), St. Thomas, V.I., *for defendant*

FEUERZEIG, *Judge*

## MEMORANDUM OPINION

Efforts at settlement having broken down, this court now must arrive at a fair resolution of the real and personal property rights of Edward Andrew Rogers and Medina Rogers and determine whether an award of alimony and child support should be made. After two full days of trial it was clear that there had been an irreconcilable breakdown of the marriage and an interim custody order was entered by which this court awarded custody of the parties' three children to their father.[1] With the most difficult issue resolved, it was hoped that the parties would be able to agree on an equitable distribution of the property that they had accumulated during the course of their 15 years of marriage. Recognizing its limited powers, the court encouraged settlement. However, as so often happens when a marriage breaks down, judicial intervention has proved unavoidable. This case typifies the problem. Unfortunately, as indicated, the problem is exacerbated by the fact that the court's jurisdiction to resolve the property question is severely limited. Todman v. Todman, 13 V.I. 599 (D.V.I. 1977).

Edward Andrew Rogers and Medina Rogers were married on May 5, 1962. It was a marriage that had its beginnings in poverty, but it is an example of how "down-islanders" from Barbados can find a niche in the Virgin Islands and pull themselves up to a most comfortable level of living. At the time of their marriage the husband, as a bonded alien, was only able to get work with his brother, while his wife, also a bonded alien, worked as a maid. Unlike today, they then lived in various shacks here and there. However, as a result of hard work on the part of the husband and a wife who gave much assistance and constant prodding, the Rogers quickly moved up the economic

---

[1] Interim Custody Order and Opinion entered September 21, 1977.

ladder. Instead of shacks and catch-as-catch-can employment, they now are possessed of four pieces of St. Thomas real estate with an equity of no less than $150,500 and which are capable of producing rent in excess of $1,900.00 per month. In addition, Mr. Rogers now has his own business, Andrew Rogers Licensed Electrical Contractor. He admits to an income of at least $25,000 a year. Mrs. Rogers, working only part-time as a legal secretary, is earning approximately $5,830.00 a year, exclusive of rent proceeds.

As pointed out, the court's authority to divide real property pursuant to a divorce is limited to decreeing that property held by the parties as tenants by the entirety is thereafter to be held by them as tenants in common. 28 V.I.C. § 7(d); See Todman v. Todman, supra. The court does, however, have the power upon dissolving the marriage to require the wife to contribute towards the nurture and education of the children to whom the husband has been granted custody and to order either the husband or the wife to make payments, in gross or installments, for the support and maintenance of the other. 16 V.I.C. § 109. In addition, the court has the power to order the wife or husband to deliver to the other his or her personal property which is in the possession or control of the other. 16 V.I.C. § 109(4).[2] Finally, the court has the power to appoint trustees to

---

[2] 16 V.I.C. § 109(4) only authorizes the court to order "delivery to the wife of her personal property in the possession or control of the husband at the time of giving the judgment." Were the court not to construe this section as also authorizing delivery to the husband of his personal property that is in the control of the wife at the time of the judgment, the statute would appear to contravene the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution made applicable to the Virgin Islands by § 3 of the Revised Organic Act of 1954, 48 U.S.C. § 1561 (1964). The rules of statutory construction dictate interpreting a statute so as to avoid a finding of unconstitutionality where to do so would not do violence to the legislative intent. Crowell v. Benson, 285 U.S. 22, 62 (1932); U.S. v. Delaware & H. Co., 213 U.S. 366, 407 (1908); 3 Sutherland, Statutory Construction § 72.08 (4th ed. 1974). The court believes in this instance that its interpretation is most appropriate and accommodating of the legislative intent.

collect, receive or expend money for the maintenance of the wife or nurture and education of the minor children. 16 V.I.C. § 109(5).[3]

■ There is no dispute that there has been an irreconcilable breakdown of the Rogers' marital relationship and that the parties are entitled to a decree of divorce. That being established, the questions remaining are whether and to what extent alimony should be awarded to Mrs. Rogers and whether and to what extent Mrs. Rogers should be required to pay child support.

Whether an award of alimony shall be made, as well as the amount to be awarded is within the discretion of the court, having regard to the conduct of both the parties, the amount of property of each, and all the other circumstances of the case. Burch v. Burch [2 V.I. 559, 582,] 195 F.2d 799, 812 (3d Cir. 1952) (Footnote omitted). It is the circumstances surrounding the parties, the wife's necessities and the husband's financial ability, the physical condition of the parties, the nature of their life together, and in these modern times the wife's independence and ability to earn her own way, which must all be considered by the court in the exercise of its discretion in awarding or denying alimony. Poe v. Poe [7 V.I. 30, 37,] 409 F.2d 40, 43 (3d Cir. 1969.)

Coman v. Coman, 11 V.I. 143, 152, 492 F.2d 273, 278 (3d Cir. 1974). See also Barrows v. Barrows, 11 V.I. 129, 489 F.2d 661 (3d Cir. 1974).

■ There is no question that an award of alimony should be made to Mrs. Rogers. As pointed out, as a result of the marriage and Mrs. Rogers' encouragement, the parties have accumulated substantial real estate holdings. Moreover, Mrs. Rogers' income producing power, even while recognizing "these modern times" and her ability "to

---

[3] Again, 16 V.I.C. § 109(5) speaks only of "money necessary for the maintenance of the wife or the nurture and education of the minor children committed to her." For the same reasons set forth in note 2, supra, this statute also would appear to be invalid unless "husband" and "him" are embraced within the meaning of "wife" and "her" respectively.

earn her own way," is not at all comparable to that of Mr. Rogers. Nor is it such as to allow her to maintain the life style to which she grew accustomed during the 15 years of marriage. Moreover, I find that she played a crucial part in helping Mr. Rogers establish a successful business and in the nurture and care of the parties' three children during their formative years. This clearly militates for an award of alimony in her favor.[4]

Alimony is in order even though I find that the fault for the breakdown of the marriage rests more heavily with Mrs. Rogers than with Mr. Rogers. Mrs. Rogers prays for a lump sum. First, she is capable of gaining full time employment. That, coupled with the equities of the parties in the real estate and the fact that she will have income from the realty the parties own, cause me to conclude that a lump sum would be most appropriate and that the husband, but for the facts recited below, should pay to the wife the sum of $38,250.00.

Against this amount, however, the court believes the husband is entitled to a setoff because of the manner in which the jointly acquired realty of the parties presently is held and because of the equities of the parties in this real estate.

The parties' homestead, which is now occupied by Mr. Rogers and the three children, is located at 1-104 Estate Wintberg. It was acquired on February 29, 1968. It presently is unencumbered and is solely in the name of Mrs. Rogers. The wife contends she purchased the land with her money. The husband disagrees. In any event, the property was put solely in the wife's name, despite the fact that the husband claims it was his understanding the property was

---

[4] Although the court has awarded custody of the parties' children to Mr. Rogers, see note 1 and accompanying text supra, that order was based principally on the welfare and best interests of the children as well as the test set down in the court's interim custody order. That determination should not in any way deprecate the important role Mrs. Rogers played in raising the children before the marriage began to break down.

to be put in both their names. There is no dispute that the improvements were purchased with joint funds.[5] The parties stipulated the property has a fair market value of $60,000. Located adjacent to the homestead is another lot, 12-A-12 Estate St. Joseph and Rosendahl, which was acquired on October 3, 1973, for $6,500. This land was to be used in conjunction with the homestead. It too was placed solely in the wife's name. The husband contends it was acquired with his funds. The wife says it was with her funds. I find it was purchased with joint funds. The parties agree in any event that the property has a fair market value of $6,500. The value of the two properties combined is thus $66,500.

In July of 1964, the parties acquired their first piece of investment property at 264 Hospital Ground. This property, which now has a fair market value of $75,000, is encumbered with a mortgage the balance of which is approximately $17,000. Monthly mortgage payments amount to $226.08, which even with insurance, tax and utility bills is more than offset by the $1,110 rental income now being received for the two-story apartment building and the apartment located beneath the three bedroom

[5] Plaintiff, relying on the Restatement (Second) of Trusts, § 442, maintains that such improvements are to be presumed as a gift to her because when a transfer of property is made to one person and the purchase price is paid by another and the transfer is to a wife, as in this instance, a resulting trust does not arise in favor of the transferor. See Comment a. This court has serious questions as to the constitutionality of § 442 and whether such a reading amounts to a denial of equal protection in view of the fact that a resulting trust would arise if the wife had transferred the property to the husband and the wife had in fact paid the purchase price. See § 440. The court need not, however, decide that question because the testimony does not support a presumption of a gift. The clear intent of the husband in making the improvements was that they would be for the purpose of providing a marital home for the parties. The court finds that it clearly was the husband's intent to have a one-half interest in the improvements. See Restatement (Second) of Trusts § 443. There is no basis for concluding that the wife had any different intent with respect to the improvements. Even assuming that the land was purchased solely with the wife's funds, it was purchased at a time and with an understanding that the land, and a boat that was purchased by the husband, both would be for the benefit of both of the parties. Moreover, I do not find that the land was purchased solely with the wife's funds, but with joint funds.

house, which also is situated on the property and in which the wife presently resides.

In February of 1974, the parties acquired another parcel in Hospital Ground, Parcel No. 137. This property has a four-unit apartment building on it with a fair market value of $65,000. It has a mortgage with an outstanding balance of approximately $39,000.00 payable in monthly installments of $447.89. When fully rented, this property brings in $820.00. Both this parcel and the other Hospital Ground parcel are held by the parties as tenants by the entirety.

While the court has no power other than to decree that the two Hospital Ground properties shall henceforth be held by the parties as tenants in common, 28 V.I.C. § 7(d) ; Todman v. Todman, supra, with respect to the other properties, I believe it important to make a finding as to the equities of the parties in view of the determination that an award of alimony should be made. Consequently, to paraphrase Knowles v. Knowles, 9 V.I. 360, 363, 354 F.Supp. 239, 241 (D.V.I. 1973), in my consideration of the equities of this case, I do not feel that it is important to have an exact accounting between husband and wife to try to determine just who paid for what and how much. I regard this husband and wife relationship as a working team where they both contributed to the support and upkeep of the family and to the acquisition of certain properties. The husband having a greater income, he naturally contributed more money to the home and to the acquisition of these properties and the improvements. On the other hand, the wife contributed more time to the care and maintenance of the home and children and contributed to the business that helped gain the funds for the parties to acquire these properties. The equities dictate that if I had the power to award these properties to either party they would be divided between them equally. The fact that the homestead of the parties and the adjoining parcel were not in fact

acquired as tenants by the entirety does not force me to conclude any differently. To reflect the true intent of the parties all of the properties should have been acquired in the names of both the husband and wife, as in fact the two Hospital Ground properties were acquired.

█ Thus, since the two Hospital Ground properties upon entry of the decree will be held by the parties as tenants in common, share and share alike, the court need do nothing with respect to them other than to enter the decree. It is implicit in the court's order, however, that the parties as tenants in common will be liable on a 50-50 basis for the mortgage, insurance, taxes, utilities and other expenses for the maintenance of these properties and, of course, each will be entitled to a 50-50 share of all rents and profits on said properties. In this regard, the wife, now presently residing at 264 Hospital Ground, shall be permitted to reside in the premises rent free for as long as the husband and children reside at 1-104 Estate Wintberg.[6] If she removes from 264 Hospital Ground then any profits or expenses relating to those premises again shall be divided equally between the parties. If at any time the husband and the children remove from 1-104 Estate Wintberg and Mrs. Rogers wishes to continue to reside at 264 Hospital Ground, she shall pay to the husband one-half of the rental value of the property she occupies, or, alternatively, she shall deduct one-half of the fair rental value of the premises from her share of the rents and profits from the Hospital Ground properties.

As to the Estate Wintberg property and the adjoining lot on Estate St. Joseph and Rosendahl, which will remain in

---

[6] This disposition is made without regard to what it would cost to house the children at 1-104 Estate Wintberg, see pages 263 and 265 infra, and is made on the basis of what it would cost to house the husband and wife in similar quarters under similar circumstances. It also is made with an intent to permit the parties to remain where they presently live without requiring them and their children to move.

the wife's name upon entry of a decree of divorce, the court believes that the husband has a rightful one-half interest in the properties[7] and the only way it can protect that interest is to decree that he should be entitled to a credit, against the lump sum alimony payment, of one-half of the equity in these two properties, or a total of $33,250.00. Accordingly, this amount shall be deducted from the lump sum alimony payment to be made to the wife, leaving a balance of $5,000.

There also was testimony as to additional properties. The husband acknowledged ownership in one-quarter of an acre of land in Anguilla in his own name acquired during the marriage as well as an interest in a one acre parcel that was subdivided out of a larger family estate. However, the ownership of the parcel was anything but clear. In addition, there was property reportedly owned by the wife in St. Kitts, British West Indies. There was, however, no evidence as to the value of either the Anguilla or St. Kitts properties. Accordingly, the court believes it is unable to make any determination as to the equities of either party in these properties.

The court now feels compelled to turn to the question of whether or not Mrs. Rogers should be compelled to contribute child support to Mr. Rogers for the support of the parties' three children. The three children are ages 12, 14 and 15 respectively. The needs of the children at this stage of their lives are extensive and the parties have tried to provide them with all that their means allow. All the children attend private schools and engage in extracurricular activities, such as dancing lessons or judo instruction, which require a regular expenditure of funds. Conservatively speaking, the expenses for the children, as testified to and as agreed to in the pretrial of this matter, amount to no

---

[7] See note 5 and accompanying text supra.

less than $1,000 a month, excluding the cost of housing. In addition, one daughter requires special medical attention because of scoliosis. Were the court to add to this the cost of housing the three children, given the style of living to which the children have grown accustomed, the court believes that the children would require not less than $1,600 a month support.

The court having awarded custody of the children to Mr. Rogers an award of child support by Mrs. Rogers to Mr. Rogers is in order, 16 V.I.C. § 109(1) and (2). Taking into account the present resources of each of the parties and the necessities of the children, 16 V.I.C. § 345, the court believes that it is appropriate for the wife to contribute to the support of the three children the sum of $400 per month until the youngest of the three reaches the age of majority. While this award may appear excessive in light of her present income, several additional factors were considered by the court in arriving at this figure. First, the testimony revealed that Mrs. Rogers only works part-time. Considering the needs and expenses of the three children and the style of living to which they have grown accustomed, and no reason appearing why the plaintiff is unable to work on a full time basis, it would not be unreasonable for the court to assume that Mrs. Rogers will in fact find full time employment to help support her children. Second, Mrs. Rogers will have full title to the homestead property and the adjacent lot, which properties have a fair market value of $66,500.00. The increase in income that Mrs. Rogers will derive from full-time employment, combined with her equity in the homestead and Hospital Ground properties, clearly militate for an award in excess of what would be ordered if only her present income were considered. The court thus believes that $400 per month is reasonable in light of Mrs. Rogers' earning power and her assets. Moreover, the alternative manner in which she will be

permitted to satisfy this obligation[8] makes this award even more appropriate.

■ The husband also has prayed for an accounting of the rents received from the Hospital Ground properties during the course of the marriage. The testimony at trial was inconclusive as to how much was received by either party or used by either party on behalf of the children. The wife and the husband both have collected rents; and, even after their separation, they made no attempt to keep a strict accounting as to how the rental proceeds were to be distributed or used. However, there is no dispute that one of the principal purposes of the parties in obtaining the rental properties was to have a source of funds for the benefit of the children's higher education and the court so finds. Accordingly, the court believes that the award of alimony and child support made herein should give appropriate consideration to the intent of the parties with respect to the rents that were collected. Thus, in keeping with the parties' intent in acquiring these properties, the court believes pursuant to 16 V.I.C. § 109(5), that one-quarter of the net profits from the rentals received by the parties should be set aside and placed in a trust for the education of the children.[9] Accordingly, said sum shall be utilized solely for the education of the three children.

■ In addition, the parties acquired a $10,298.18 certificate of deposit in December of 1975 with proceeds

---

[8] See page 265 infra.

[9] On October 19, 1966, three savings accounts were opened in the name of Medina Rogers in trust for each of the parties' three children. Defendant's Exhibits K, L, and M. The accounts originally were opened to provide a reserve for the children's education. On September 10, 1973, $1,000 was drawn out of each account and was used by the Rogers to purchase the 137 Hospital Ground property with the understanding that that property, along with 264 Hospital Ground, would be utilized for the children's education. Many times, however, the rents had to be used by the parties for other purposes as well. The court believes that setting aside one fourth of the future rent proceeds will comport with the parties' intentions as well as their conduct over the years.

from the rents. Defendant's Exhibit A. This money came from an account "Medina Rogers int for Sandra Rogers." Defendant's Exhibit N. Again, the parties made it clear that the certificate was to be utilized for the education of the children. However, when the parties separated, $5,000 was used by Mrs. Rogers. There is a balance today of about $5,000. Again, in keeping with the intent of the parties, it is believed that the remaining sum of $5,000 should be placed in trust for the children's education.

The court will not at this time appoint a trustee or trustees but will permit the parties 30 days in which to come to an agreement upon a trustee to act on behalf of the children. Failure of the parties to agree on the appointment of a trustee will result in the court entering an order appointing a trustee or trustees within 30 days of the date of the order issued with this opinion.

 Although this court does not have the power to order a disposition of the realty or even a leasehold interest to one of the parties upon entry of a divorce, Todman v. Todman, supra, the court does believe that it has the authority to make an alternative award in lieu of the child support payment. Knowles v. Knowles, supra. Accordingly, in lieu of the $400 per month child support, which sum shall be payable by the wife to the husband for the support of the three children until the youngest of the three children reaches the age of majority, the wife can satisfy her obligation of child support by permitting the children to reside rent free in the parties' marital homestead, 1-104 Estate Wintberg. It is understood, however, that in the event the wife elects this option and permits the children to remain in the home, the husband shall be permitted to remain with the children as their legal custodian.[10] It shall then be the obligation of the husband in lieu of rent to pay

───

[10] See note 6 supra and text on page 261.

all costs for reasonable maintenance and upkeep of the premises as well as the water and power, gas, telephone, and other routine living expenses. The house being in the name of the wife, all taxes and costs for major repairs will be her responsibility.

 Finally, the court believes that in view of the financial situation of the parties, the wife should be awarded attorney's fees. Based upon the complexity and time required of counsel in this case, the court believes that an award of $3,000 clearly would be reasonable.

Accordingly, an order shall be entered consistent with this Opinion.