**KARINE LAURENT, Plaintiff**

v.

**BERNARD LAURENT, Defendant**

Family No. 354/1978

Territorial Court of the Virgin Islands

Div. of St. Croix at Christiansted

November 21, 1978

---

JOHN F. JAMES, ESQ. (JAMES & RESNICK), Christiansted, St. Croix, V.I., *for plaintiff*

JEAN–ROBERT ALFRED, ESQ., Christiansted, St. Croix, *for defendant*

MEMORANDUM OPINION

SILVERLIGHT, *Judge*

This hotly contested divorce action is before the Court on complaint, answer, counterclaim and reply thereto. Plaintiff appeared personally and through her attorneys, James & Resnick (John F. James of Counsel), and defendant appeared personally and through his attorney, Jean-Robert Alfred, Esq. Approximately four hours of testimony was taken, including that of the parties, that of a psychologist, and that of a psychiatrist. In addition, the Court held an in camera conference with the two minor children of the marriage in the presence of counsel.

Upon the totality of the evidence, it is clear that the parties are entitled to a divorce, each from the other. It is also clear that each party is capable of adequately supporting himself or herself. The only areas needing consideration are the award of custody of the minor children of the marriage and their support, and the disposition of the jointly owned property of the parties.

It is undisputed that the parties were married in Geneva, Switzerland, on July 3, 1964, and that their marriage is a valid subsisting marriage. It is also conceded by both parties that after their marriage, they arrived in the Virgin Islands on or about August 20, 1964, and each of them have maintained their respective domiciles and residences in the Virgin Islands, uninterruptedly since that date.[1] Two children were born of this union, namely, Phillippe Laurent, now 11 years of age, and Thierry Laurent, now 9 years of age, both of whom reside in their parents' marital home which is also occupied by the parties hereto.

The marital abode where plaintiff and defendant reside (although occupying separate rooms) is described as Plot 17 Estate Hermon Hill, Christiansted, St. Croix, is owned by the parties as tenants by the entirety, and has a value estimated to be $71,000, over and above a $54,000 mortgage which is still outstanding. The parties also own, in joint name, a real estate mortgage covering a plot of land located in Estate Shoys, Christiansted, St. Croix, which mortgage matures in April, 1979, and will produce $48,000, including principal and accrued interest. In addition, again in joint name, the parties own an apartment in Biarritz, France, in which they have an equity of $30,000, over and above a $30,000 mortgage still outstanding, and not

---

[1] The testimony discloses that each of the parties has left the Virgin Islands for vacations of as much as three months' duration, and during their separation before trial, the defendant was off-island for six months. The evidence clearly establishes, however, that neither domicile nor residence was affected by these sojourns.

411

including the furniture and furnishings therein which have an estimated value of $8,000.

The parties are also the owners, as equal partners, of a retail watch and jewelry business located in Christiansted, and known as "The Omega Shoppe." This business has an inventory of approximately $150,000 and liabilities of $90,-000 to $120,000. Most importantly, this business has had gross sales averaging $200,000 per annum during the past five years, has permitted the parties to draw for their needs the sum of $1,000 per month, in addition to payment of all of their major expenses such as mortgage payments, and has provided sufficient funds to permit the parties and their children to take annual European vacations of as much as three months' duration. This business is presently being operated by the defendant and no evidence has been offered from which it may be inferred that either gross sales or income to partners will be significantly reduced in the foreseeable future. The joint assets of the parties have been acquired by mutual effort during the entire course of their marriage.

The marriage has been deteriorating over a long period of time. The parties have lost their ability to communicate with each other, each asserting real or imagined failings on the part of the other, and a substantial, persistent tension has developed, rendering the marriage untenable. The separation of the parties prior to the institution of this suit was an effort toward relieving this tension, but it has failed to accomplish that end. As a result, the parties occupy separate rooms in the marital abode under a temporary truce, or cease fire.

Despite her protestations of innocence, it is clear that plaintiff has embarked on a program of vilification of defendant with the intention of alienating the children from him. This Court simply cannot believe that a child of 11 years, notwithstanding his classification of "borderline

gifted," is perceptive enough to determine, on his own and without prompting from some other source, that his father is "lazy," that he wants to leave the Virgin Islands, that he wants to take the store from the plaintiff, and that he will not support the family.

These conclusions coming from an 11-year-old boy, in the circumstances here present, coupled with the fact that plaintiff has caused the children to take meals separate and apart from the defendant, and the deterioration of the relationship between the children and the defendant at the present time, as compared to their relationship prior to January, 1978, demonstrate the presence of the heavy hand of maternal guidance.

## I—THE MARRIAGE

There are dual conditions which the Court, from the evidence, must find present before dissolution of the marriage may be granted. The Court must find "that there has been a breakdown of the marriage relationship to the extent that the legitimate objects of matrimony have been destroyed and there remains no likelihood that the marriage can be preserved." 14 V.I.C. § 104.

Both parties testified that the marriage has been deteriorating for a long period of time, and communication and trust have been lost. The separation of the parties has been prolonged,[2] and they have persistently pursued the termination of their marriage by this action. Our District Court has held that these circumstances more than support the judicial conclusion that the legitimate objects of matrimony have been destroyed and there is no reasonable likelihood that the marriage can be preserved. Hendry v. Hendry, D.C.V.I. (St. Croix), Civil No. 1978-131 (1978).

---

[2] Although the parties presently occupy separate quarters in the marital abode, it cannot be said that their separation is any less a separation than if they were living in different houses.

Each of the parties, either in their pleadings or in their testimony, seek the assistance of this Court in disposing of their jointly owned property. As hereinbefore stated, all of the jointly owned property is either personalty, realty located outside the jurisdiction of this Court, or realty constituting the marital abode.

This Court has jurisdiction to dispose of property only within the parameters of the statutory authority granted by the provisions of 16 V.I.C. § 109 or 33 V.I.C. § 2305(d). It is well settled that a court of equity in dissolving a marriage cannot divide the property of the spouses except pursuant to statutory authority. Dyndul v. Dyndul, 13 V.I. 376, 541 F.2d 132 (3d Cir. 1976); Knowles v. Knowles, 9 V.I. 360, 354 F.Supp. 239 (D.V.I. 1973). It is crystal clear that none of the jointly owned property of the parties constitutes "personal property [of the wife] in possession or control of the husband at the time of giving the judgment." 16 V.I.C. § 109(4). It is also crystal clear that this Court has no authority to dispose of the apartment located in Biarritz, France, or the furniture or furnishings situate therein, since these are clearly beyond the jurisdiction of this Court. This leaves, as the only possible property subject to disposition, the marital abode which, in an appropriate case, would be subject to transfer pursuant to 33 V.I.C. § 2305(d).

Because the parties have adduced insufficient evidence as described in Section IV of this opinion, infra, this Court declines, at this time, to make any disposition of this property. The equities cannot be validly weighed in this case given the equality of ability of support which has been ascribed to the parties, except on the theory that the needs of the children may give rise to such consideration. Section IV of this opinion, infra, articulates the need for further

evidence before an evaluation of the equities may be properly made. This result does not leave the parties without a remedy; they may pursue their rights to partition in a separate action if they so choose.

### III—CUSTODY

No evidence has been offered which can reasonably give rise to the inference that either parent is unfit to have custody of the minor children. Were it not for the fact that this Court is convinced that plaintiff has actively attempted to alienate the children from defendant, and the further fact that the children express a preference to be with their mother rather than their father, this Court would be inclined to hold that joint custody of the children by both parents, or custody of the children in either parent, subject to reasonable visitation rights reserved to the other, would suffice to meet the test of "serving the welfare and best interests of the children." The current trend is to disregard the so-called "tender years" presumption and to rely solely on the evidence adduced to determine what is in the best interests of the children. Hodge v. Hodge, 13 V.I. 561 (D.V.I. 1977); Bergen v. Bergen, 8 V.I. 336, 439 F.2d 1008 (1971); 16 V.I.C. § 109(1).

To determine what is in the best interests of these children, this Court has considered the limited evidence of the parents' alleged parental misconduct, and has compared their capacity for supervision and training, their desire for custody, the preference of the children, and the environment and surroundings to which the children might reasonably be expected to be exposed by each parent.

Finally, but by no means of lesser importance, this Court has considered the testimony of Dr. Joseph Rothstein, a psychologist who has evaluated these children, and Dr. Olaf Hendricks, a psychiatrist with whom defendant has consulted. The former concludes that both children are border-

line gifted children who need mental and physical stimulation and *"attention from both parents"* (emphasis added). The latter supports the conclusions reached by Dr. Rothstein, having reached an independent conclusion that these children are of "latent superior" intelligence, are "very sensitive" and that defendant "could provide a meaningful positive environment." This Court believes that these conclusions, articulated in layman's language, simply mean that these children need to be brought up recognizing they have both a father and a mother, each of whom loves them in his or her own way, and each of whom should be the recipient of the love and affection of their children.

Neither can the children's preference to live with their mother be overlooked. The in camera conference of the Court, counsel and the children clearly evidenced the preference of the children to live with plaintiff, although as was stated, supra, this attitude, the Court finds, stems from plaintiff's course of conduct.

The sum total of the foregoing leads this Court to the conclusion that the scales tip slightly in favor of the award of custody of the children to plaintiff. This award, however, must be tempered with a reservation to the defendant of liberal visitation rights, in order that the effects of the alienation of these children from their father may be minimized. The best interests of the children require that the defendant be granted uninterrupted visitation with the minors for a six-week period during each summer vacation.

Furthermore, defendant shall be granted visitation with the children on one weekday and one week-end day of each week, and during one-half of each Easter, Christmas and New Year's holiday. The precise days on which these visitations shall occur shall be established by reasonable oral notice given to plaintiff by defendant of his selection of dates. In any event, no visitation shall be exercised which interferes with the children's school or church attendance.

In this manner, the children will not be subjected to any haphazard change in their living patterns but will, nevertheless, benefit from the male influence which is so vital to their normal development and which close contact with their father can provide.

## IV—SUPPORT OF CHILDREN

This Court may, upon the dissolution of the marriage, provide by decree "for the recovery from the party not granted care and custody of . . . children [of the marriage] such an amount of money, in gross or in installments, as may be just and proper for such party to contribute toward the nurture and education thereof." 16 V.I.C. § 109(2). Some guidance as to what constitutes a "just and proper" contribution by a party toward the nurture and education of a minor child may be obtained from 16 V.I.C. § 341,[3] and 16 V.I.C. § 345,[4] both of which must be read in pari materia with Section 109(2), supra. See Christensen v. Christensen, D.C.V.I. (St. Croix), Civil No. 69-111 (1978); Armstrong v. Armstrong, D.C.V.I. (St. Croix), Civil No. 209-1977 (1978); and Hodge v. Hodge, Territorial Court (St. Croix), JDR No. 197-75 (1977).

In the case sub judice, while there is sufficient evidence from which the ability of the party not granted custody to pay support may be determined, the record is totally devoid of any evidence from which the monetary need of the minor children may be determined. There is no way, on the record before me, that an award of child support may be made unless the same be grounded in sheer specu-

---

[3] "As used in this subchapter, 'support' includes all that is indispensable for maintenance, housing, clothing and medical attention according to the social position of the family. Support also includes the education and instruction of the person supported when he is a minor."

[4] "The amount provided for support shall be proportioned to the resources of the person giving such support and to the necessities of the party receiving it, and shall be reduced or increased in proportion to the resources or the necessities of the latter."

lation. This Court cannot and will not award child support arbitrarily; the basis of an award must be articulated in findings of fact. Nonetheless, these minor children may need some support, and this Court, therefore, will set down for the presentation of additional evidence a hearing on the issue of child support, the same to be fixed and determined by supplemental Order.[5]

A decree consistent with this Memorandum Opinion shall enter forthwith, each party to bear his or her own costs.

---

[5] This procedure is appropriate, in any event, pursuant to the provisions of 16 V.I.C. § 110.