**RITA KIRBY, Plaintiff**

**v.**

**CLARENCE KIRBY, Defendant**

# Family No. 1156/1977

# Territorial Court of the Virgin Islands

### Div. of St. Croix at Christiansted

# May 3, 1978

602

LEROY A. MERCER, ESQ., St. Croix, V.I., *for plaintiff*

EDDY RIVERA, ESQ., St. Croix, V.I., *for defendant*

SILVERLIGHT, *Judge*

### MEMORANDUM OPINION

This action for divorce came on for hearing on February 28, 1978, on complaint, answer and counterclaim. No answer to the counterclaim was filed, but the Court treated the matter as if there had been a general denial of the counterclaim.

The complaint, over and above a request for divorce, seeks to have title to premises 113 Estate Golden Rock, Christiansted, St. Croix, owned by plaintiff and defendant as tenants by the entirety, conveyed to the plaintiff pursuant to the authority of 33 V.I.C. § 2305(d). The counterclaim alleges joint ownership of property known as 3A Sally's Fancy, Christiansted, St. Croix, asserts an equitable interest in defendant as to this property, and further

seeks, "a determination of the property rights of the parties in and to No. 113 Estate Golden Rock . . . ".

The facts developed by the testimony and evidence adduced at trial are, for the most part, simple to determine.

■ It is undisputed that both parties are residents and domiciliaries of the Virgin Islands, having resided in these islands on a continuous basis since at least 1964. Plaintiff and defendant entered into a ceremonial marriage in St. Croix on April 18, 1964, and that marriage has not been terminated. No children were born of the marriage which was subjected to the usual "ups and downs" of married life over the years. Several years ago, the marital relationship began to deteriorate and a pattern of constant bickering and arguing developed. This pattern slowly and inexorably expanded as time went on until it had reached a point at which defendant frequently exercised violence upon the plaintiff, and the police were called on numerous occasions to preserve the peace.

Several efforts towards conciliation were attempted by the parties without avail until, finally and inevitably, the parties lost all respect, love and affection for and interest in each other. They have not cohabited as husband and wife for several months and each is adamant in his or her determination to terminate this presently painful union.

In these circumstances, and further considering the facts relative to disposition of properties to which reference will be made, infra, this Court has no difficulty in finding that the legitimate objects of matrimony have been destroyed, the marriage having been terminated in fact by the attitudes and actions of the parties, and that no reasonable likelihood of its preservation remains. 16 V.I.C. § 104. The divorce will be granted.

Having made and entered the foregoing factual findings and conclusions, there remains only the need to deal with

the prayers for disposition of the real property contained in the complaint and counterclaim.

■ The undisputed testimony of all of the parties establishes that the real property described as No. 113 Estate Golden Rock, Christiansted, St. Croix, is jointly owned by the parties as tenants by the entirety. The testimony also establishes, without contradiction, that since approximately early 1972, the parties have utilized the home situate on premises No. 3A Sally's Fancy as the marital home and have consistently rented the Golden Rock property until a date subsequent to the filing of this action. The Golden Rock property under this set of facts is clearly not the "homestead" as defined in 33 V.I.C. § 2305(a) and as to which this Court is granted authority to ". . . make disposition of the homestead in accordance with the equity of the case," since it was not the marital abode at the time of the separation of the parties. 33 V.I.C. § 2305(d). See Knowles v. Knowles, 9 V.I. 360, 354 F.Supp. 239 (D.C.V.I. 1973); Todman v. Todman, — V.I. —, 571 F.2d 149 (C.A. 3d, 1978, Docket No. 77-2173). Accordingly, as to this property, this Court lacks authority to act and leaves the parties to those other remedies which may be available to them as tenants in common.[1] Dyndul v. Dyndul, 13 V.I. 376, 541 F.2d 132 (C.A.3d 1976).

The Court is, therefore, finally faced only with the question of disposition of the marital abode which constituted the homestead of the parties.

Defendant has asserted his alleged entitlement to an interest in the premises known as No. 3A Sally's Fancy, Christiansted, St. Croix, solely on the legal theory of constructive or resulting trust, since record title to this property is solely in Rita Thompson (plaintiff's maiden name), and he has allegedly contributed large sums of money to

---

[1] See 28 V.I.C. § 7(c) and (d).

the construction of the dwelling house on this parcel. The Court, however, will also treat the defendant's position as seeking redress under the provisions of 33 V.I.C. § 2305(d) and will weigh the equities pursuant thereto.

At the outset, it is conceded by all parties that defendant contributed $5,000, more or less, to the construction of the dwelling house situate at 3A Sally's Fancy and further, that on or about August 11, 1972, he paid an additional $3,500 to Fidelis Canton, Jr., the construction contractor.[2] Both parties agree the plaintiff had acquired title to the land prior to her marriage to defendant and that a $10,000 real estate mortgage loan was obtained from Peoples Bank of the Virgin Islands to defray part of the construction costs. The mortgage note and the mortgage which secures its payment were executed by both plaintiff and defendant, although plaintiff has made all of the mortgage payments.

Various estimates of cost of construction have been presented—$29,000 plus $1,000 value of a salvaged cistern by the contractor, a total of $30,000; $35,000 by the plaintiff; and, by adding the sums which defendant alleges he paid out of his own moneys,[3] that is, $5,000 at commencement of construction, $3,500 on August 11, 1972, and $20,480.69 as evidenced by defendant's Exhibits A and B in evidence, and the conceded $10,000 mortgage loan, a total of $38,980.69, by defendant.

Each of these figures was exclusive of land cost, the parties having agreed that the land was acquired before their marriage. Plaintiff testified that she had brought with her, upon her return to the Virgin Islands after many years on the mainland where she was employed as a nurse, the sum

---

[2] See receipt marked in evidence as a part of defendant's Exhibit B.

[3] Defendant testified that the $10,000 mortgage was not included in the expenditures which comprise defendant's Exhibits A and B in evidence, totaling $20,480.69.

of $12,000 or $13,000. She allegedly utilized $5,000 or $6,000 of this sum to raze some partial construction on parcel No. 3A before commencement of the subject construction and applied the remainder, some $6,000 or $7,000, to the construction costs under discussion. To this sum we may add the $10,000 derived from the mortgage loan, the $8,500 which it is conceded defendant contributed, and finally the sum of approximately $8,000 derived from her brother's funds, advanced to her through her parents. This latter alleged contribution is recited in plaintiff's testimony and corroborated by the testimony of plaintiff's brother, Eugene Thompson. The grand total of these figures is $33,500.00.

This Court finds that more probably than not, that is, by a preponderance of the evidence, the construction cost of this dwelling was very close to $30,000. Certainly, defendant failed to carry the burden of proving contributions by him to the extent of $28,980, more or less, particularly when one considers the failure of corroborating evidence of such expenditure. Furthermore, plaintiff's Exhibits 3 and 4 in evidence,[4] between December, 1969 and August, 1972, the period of construction preceding the last alleged payment, show only withdrawals as follows:

A. *The Bank of Nova Scotia*

| | |
|---|---|
| 1/23/70 | $4,000.00[5] |
| 10/23/70 | 50.00 |
| 7/12/71 | 50.00 |
| 5/1/72 | 268.00 |
| 5/31/72 | 200.00 |

---

[4] Savings account passbooks in the name of defendant in the Bank of Nova Scotia and First Pennsylvania Bank & Trust Co., N. A. (formerly Virgin Islands National Bank), respectively.

[5] This corroborates the initial $5,000 contribution of defendant when considered together with a $1,500 cash settlement received by defendant from his employer as disclosed by defendant's testimony.

| | |
|---|---|
| 8/1/72 | 60.00 |
| 8/10/72 | 3,628.00[6] |

B. *The First Pennsylvania Bank & Trust Co., N. A.*

| | |
|---|---|
| 3/3/72 | $ 900.00 |
| 3/17/72 | 1,358.16 |

As may be seen, exclusive of the first and last withdrawals from Bank of Nova Scotia, the contribution of which by defendant for construction costs is not disputed, only an additional sum of $628.00 was withdrawn by defendant during the critical period. The First Pennsylvania Bank withdrawals total only $2,258.16, or a total of otherwise unallocated withdrawals from both banks of $2,886.16. Needless to say, the grand total which can be substantiated falls tremendously short of the defendant's contribution claim of $29,000, more or less.

This Court, therefore, finds as a fact that defendant's contribution to the construction of the dwelling on Parcel 3A Sally's Fancy was $8,500.00.

Defendant's claim under the legal theory of constructive trust can arise only "[if] a person *holding title* to property is subject to an equitable *duty to convey it* to another on the ground that he would be unjustly enriched if he were permitted to retain it . . ." Restatement, Restitution, § 160 (emphasis added).

In the case at bar, under no equitable principle can it be said that a duty to convey the property is imposed on the plaintiff. On the contrary, given this factual setting, the best that might be hoped for is the imposition of an equitable lien to secure defendant's contribution. Restatement, Restitution, § 161.

---

[6] This payment coincides with the payment made by defendant to the contractor on August 11, 1972, in the sum of $3,500, the difference of $128.00, according to defendant's testimony, having been retained by him for personal use.

 Neither can a resulting trust be found under the facts here present because in these circumstances,

A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of. Restatement 2d, Trusts § 404.

In the case sub judice, there is no evidence which would reasonably give rise to the inference that defendant did not intend plaintiff to hold a beneficial interest in the property. Rather, the evidence points to defendant's intent that plaintiff have the beneficial interest in the property as just one of the many things constituting the marital unity of the parties.[7]

Although there is some case law to the contrary,[8] this Court prefers to hold to the Restatement position referred to in Restatement, Restitution, § 161, supra. This was the course followed by the Appellate Division of the New Jersey Superior Court in Phillips v. Phillips, 350 A.2d 504 (1975), and, albeit indirectly, by the Texas Court of Civil Appeals in Milligan v. Milligan, 282 S.W.2d 127 (1955).

 This Court feels that this approach does no violence to the common law rule of reimbursement[9] since in the factual setting of the case sub judice, given the sums of money involved, it may be reasonably inferred that any

---

[7] See Croston v. Croston, 247 N.E.2d 765 (Ohio 1969) and Western v. Stuckert, 329 F.2d 681 (C.A. 1st, 1964) for a discussion of the distinction between a constructive trust and a resulting trust, and McQuin v. Rice, 199 P.2d 742 (Cal., 1948) for a case factually similar to ours in which the theory of resulting trust has been rejected.

[8] Cf. Gray v. Bradley, 62 A.2d 139 (N.J. 1948) and Weroniecki v. Weroniecki, 167 A.2d 251 (Conn. 1960).

[9] See 41 C.J.S., Husband & Wife, § 299, P. 300; Thoben v. Thoben, 260 S.W. 376 (Ky. 1924); Luebbers v. Luebbers, 127 A. 83 (N.J. 1925), and Bohannon v. Bohannon, 249 S.W.2d 544 (Ky. 1952). This rule generally denies recovery by either spouse for contributions to the other spouse's sole property.

presumption that defendant intended his contribution to be for the benefit of the plaintiff's sole estate, has been rebutted. The uncontroverted testimony of the defendant that the original intention of the parties was to construct the Sally's Fancy dwelling for rental purposes would indicate, at the least, the intent of both parties to improve the property for their *mutual* benefit. The fact that this property was later utilized instead as the marital abode offers no substantive proof of a change of intention which would defeat the original concept of mutual benefit.

For the reasons stated herein, this Court concludes that an equitable lien in the sum of $8,500.00 in favor of defendant to secure his contribution to the construction of the dwelling at 3A Sally's Fancy must be imposed upon that property, for to do less would be to allow plaintiff to become unjustly enriched to that extent. In so doing, this Court, in its judgment, will have reasonably exercised its discretion in "mak[ing] disposition of the homestead in accordance with the equity of the case." 33 V.I.C. § 2305(d).

A Final Judgment consistent with this opinion shall enter.