**FELIPE N. FUENTES, Plaintiff**

v.

**AYRES FUENTES, Defendant**

Fam No. D89/1995

Territorial Court of the Virgin Islands

Div. of St. Croix

September 8, 1997

GEORGE W. CANNON, JR., ESQ., St. Croix, U.S.V.I., *for Plaintiff*

H.A. CURT OTTO, P.C., Christiansted, U.S.V.I, *for Defendant*

STEELE, *Judge*

## MEMORANDUM OPINION

This matter was heard before the Court on September 27 and November 22, 1996. The parties, who have already dissolved their bonds of matrimony by a divorce decree from this Court, pray for division of the marital estate. Four issues are presented for determination. First, whether plaintiff's retirement pension is marital property subject to equitable distribution; second, disposition of the marital homestead; third, defendant's entitlement to spousal maintenance; and fourth, defendant's entitlement to attorneys' fees.

## I. Factual & Procedural History

Upon careful review of the evidence — in the form of financial statements and expense reports, testimonial transcripts of the parties and their respective witnesses, and the parties' testimonial demeanor and credibility — the Court makes the below finding of facts.

On August 28, 1977, plaintiff-husband Felipe Fuentes ("plaintiff") married defendant-wife Ayres Fuentes ("defendant"). No children were born of the marital union, although defendant had a daughter from a prior marriage.[1] The parties separated on January, 1990. On May 1, 1995, the marriage ceased when plaintiff filed a divorce complaint.

Prior to their marriage, the parties owned separate parcels of realty located in St. Croix. Plaintiff owned a homestead located at 145 Sion Farm, currently the marital homestead. Defendant owned a homestead at M. Lipellier, LBJ, ("LBJ"). Immediately after their marriage in 1977, the parties commenced residence at LBJ until 1978. During the one year residence at LBJ, plaintiff contributed to the modification and expansion of defendant's home. Thereafter,

---

[1] Adelia Rivera, defendant's natural daughter, resided with the couple for nearly ten (10) of their seventeen (17) year marriage.

the couple moved to plaintiff's home at 145 Sion Farm, which defendant currently occupies.

In September 1995, the LBJ property was damaged by hurricane Marilyn. Defendant testified that the damage made it financially unfeasible to rebuild the property, resulting in its sale for $43,451. Defendant utilized the sale proceeds to commence construction of a new home consisting of two bedrooms on a parcel of land, located in Work & Rest, owned in common tenancy by defendant and her father. At the time of the hearing, only the floor and ground foundations were complete. Defendant testified that seven years are required for the new home's proper completion. A financial statement tabulating expenses of $45,851.72 was submitted by the defendant listing the costs of the ongoing construction of her new home, as well as other personal items. Although defendant listed $45,851.72 as total expenses for the construction of the new property, nearly $9,000 of that amount related to matters other than construction.[2]

Defendant, on cross-examination, asserted that she never considered the LBJ home marital property despite the contributions made by plaintiff, and the number of years the property was in the couple's marital estate. Thus, defendant informed that she never felt obligated to apprise plaintiff of the proceeds from the sale of the property.

A personal financial statement submitted by defendant reveals a net worth of $25,540, and monthly living expenses of $1,100. Defendant derives a monthly income of $490.00 by way of Social Security, and temporary alimony from plaintiff. Since their separation, defendant received from plaintiff $6,500 for the year 1992, and $300 for medical expenses. Currently, defendant is receiving $300 per month in temporary alimony. Defendant further submits that her adverse medical condition precludes her from gainful employment, although on cross-examination defendant testified to having conducted some part-time work at home. Notwithstanding, the evidence substantiates a limited employment future for the defendant, as evidenced by her medical condition.

---

[2] For example, defendant gifted $5,000 in cash to her daughter, Adelia Rivera, and expended other monies on medical care, and personal matters.

31

Defendant currently resides in the marital homestead. Maintenance expenses, insurance and mortgage payments are defrayed by plaintiff. Insurance proceeds from the aftermath of hurricane Hugo went to the rebuilding of the 145 Sion Farm. However, defendant claims that $28,000 was provided to plaintiff to improve the marital homestead in 1978.

### 2. Plaintiff's Earning Capacity & Needs

Thirty years ago, plaintiff began his career at Water & Power Authority ("WAPA"). As of January 17, 1995, plaintiff's monthly pay checks reflected a yearly salary of $41,661. Plaintiff's tax returns for the preceding five years reflect earnings of $57,038 for 1994, $55,692 for 1992, $53,433 for 1991, and $48,125 for 1990. The foregoing amounts represent a significant departure from last year's earnings as a result of defendant's extensive overtime work during the hurricane-ridden seasons that characterized this region's weather for the last seven (7) years.

Plaintiff is 63 years old, and intends to undertake retirement next year. According to expert testimony, plaintiff, a thirty year veteran worker for WAPA, is entitled to 90% of his average yearly salary. Defendant's expert testified that based on an average yearly salary of $41,662, plaintiff would be entitled to a gross amount of $36,245 per year, or a monthly amount of $3,020. The expert's conclusion was predicated upon the result of multiplying thirty (30) years of service by three-percent (3%), and then further multiplying the foregoing result by plaintiff's average yearly salary. The monthly sum of $3,020, however, does not reflect tax withholdings, insurance deductions, or deductions for loans owed to the government Employee Retirement System "GERS." Further, defendant's expert witness failed to inform this Court with certainty whether plaintiff's occupation was "hazardous" or "non-hazardous," when the V.I. Government began using such classifications for purposes of determining retirement benefits, and how many years plaintiff was classified as a "hazardous" or "non-hazardous" employee. Finally, lacking is information regarding the structure, present value, options, etc., of plaintiff's pension plan. This lack of evidence resulted in an limited factual record that inhibits this Court, at this point, from making any equitable disposition of plaintiff's pension fund.

Currently, plaintiff resides at 38-1 Golden Grove, an old and dilapidated twenty (20) year old trailer home. Plaintiff pays $247.96 per month on a $20,000 mortgage balance secured by same trailer home. At sixty-three (63) years of age, and according to his testimony, plaintiff does not intend to continue employment, and desires to return to the marital homestead at 145 Sion Farm to commence retirement.

### 3. The Parties Personal Circumstances

Allegations by the defendant of marital infidelity, and physical and mental abuse abound in the transcripts. Defendant alleged in her pleadings, and during trial, that plaintiff was in the relationship of a paramour. While plaintiff concedes to that allegation, he cites defendant's frequent and lengthy stays in New Jersey, and the drift within their relationship as instrumental in causing him to pursue an extra-marital relationship. Plaintiff submits that a man of his virility, and "needs," necessitate a continuing sexual relationship with a woman. Thus, plaintiff posits that the breakdown of his relationship, coupled with defendant's excessive residence in the mainland, during the late 1980's, rendered him desirous of an extra-marital relationship.

Lengthy testimony was provided by defendant and her daughter of verbal, and sometimes physical, altercations between the couple. However, no evidence was ever introduced showing physical abuse by plaintiff.[3] Neither police reports nor testimony of parties other than plaintiff's step-daughter was provided to substantiate defendant's allegation of physical abuse. Moreover, the step-daughter's testimony, at times, was contradictory and inconsistent. During direct examination, she described plaintiff as a caring man, always providing financial support for his family; this fatherly treatment she submits made her adopt plaintiff's family name as her surname. However, as testimony became protracted, her testimony became acrimonious, and she admitted

---

[3] Protracted testimony was provided regarding altercations between plaintiff and defendant. The testimony of both parties appeared completely contradictory, with each version being rather plausible. Neither party submitted probative evidence, either through testimony of other witnesses, medical reports, or requests for temporary restraining orders, indicative of physical abuse by plaintiff. Therefore, the Court finds that physical abuse was not a characteristic of the parties' marriage.

33

to physically attacking plaintiff and attempting to strike him with a large-blade knife, commonly referred to as a "machete."

During closing, four issues were presented by defendant's attorney for determination. First, whether defendant is entitled to the marital homestead. Defendant argues that the couple's eighteen 18 year[4] marriage entitles her to a life estate in the marital property, and upon sale of the property a portion of the proceeds. Defendant further argues that the equity and sale proceeds of her LBJ property[5] should not be used in the Court's disposition of the marital homestead, and equitable distribution of plaintiff's retirement benefits.[6]

Secondly, defendant requests alimony in the amount of $900 per month at least until retirement, excluding her equitable share from plaintiff's pensions checks. Defendant cites to, inter alia, her deteriorating medical condition and inability to obtain gainful employment as grounds for alimony.

Thirdly, defendant further submits that plaintiff's pension fund is marital property subject to equitable distribution, making her entitled to a percentage of the retirement funds. Since the issue of equitable distribution of pension funds is an issue of novel impression in this jurisdiction, naturally, both counsel submitted polar views. Defendant's counsel supports the view that defendant partake in plaintiff's monthly pension funds according to a financial formula utilized by courts of other jurisdictions. In support of her position to treat plaintiff's pension checks as marital property subject to equitable distribution, defendant, in her post-trial sup-

---

[4] Plaintiff's attorney draws a difference between the date of actual divorce and separation. Plaintiff submits that the couple's marriage lasted twelve (12) years, and not eighteen (18). Since the number of years of a marriage is an inherent part of the equitable distribution equation, and thus influences the distribution of marital property, a discussion of when a marriage ceases for purposes of dividing the parties' assets will be provided.

[5] During closing, defendant's attorney argued that the LBJ property is a "bunch of building materials sitting on a site she doesn't have the money to do anything with"; in an effort to persuade this court not to consider the value of the LBJ property in the equitable distribution equation, and permanent alimony award.

[6] In support of her argument, defendant points that she has always made it clear to plaintiff that the LBJ property was separate property, and thus should not be considered by the Court in determining defendant's entitlement to the marital homestead.

plemental brief, cites other jurisdictions numerous precedents incorporating pension funds in the "marital property" definition.

Finally, encouraging this Court to exercise its discretion to award attorney's fees, defendant requests $2,000 in attorney's fees. From these facts, we find disposition of this matter efficiently accomplished by addressing the foregoing four issues, in the order presented above.

## II. Analysis

■ Under the Virgin Islands Code, this Court has statutory authority to dispose of two types of marital assets: the marital homestead, and the couple's personal property. 33 V.I.C. § 2305(b); 16 V.I.C. 109(b). Real property owned by the couple, other than the marital homestead, is divided of by way of partition through a civil action. Since, here, the sole real and personal properties owned by the parties are the marital homestead and plaintiff's pension benefits, respectively, this Court possess complete statutory authority to make a complete disposition of this matter.

### A. The Marital Homestead

■ In the Virgin Islands, a divorce court's authority to dispose of the marital homestead is statutorily defined. 33 V.I.C. § 2305(d).[7] *See Dyndul v. Dyndul*, 541 F.2d 132, 13 V.I. 376 (3rd Cir. 1976). In disposing of the marital homestead, the Court is vested with broad discretion to consider the circumstances and facts on a case-by-case basis. Furthermore, 33 V.I.C. § 2305(d) allows the Court to consider the "equity of the case," which has been interpreted to include consideration of fault contributed by either spouse in ending the marriage. *Charles v. Charles*, 788 F.2d 960, 965 (3rd Cir. 1986) (holding that the plain meaning of "equity of the case,"[8] as

---

[7] 33 V.I.C. § 2305(d) reads in partial as follows:

. . . ; and in the case of a divorce, the court which grants it shall make disposition of the homestead in accordance with the equity of the case.

[8] In *Charles*, the Third Circuit Federal Court of Appeals examined the term "equity of the case," and informatively commented:

Equity of the case is a familiar legal term that has been interpreted as a broad grant of jurisdiction to the courts, and any other interpretation of that phrase in § 2305(d) would be an unwarranted limitation of that term. This conclusion

provided in 33 V.I.C. § 2305(d), allows a court to consider marital fault).

Therefore, unlike determinations of alimony, divorce, and support, all of which do not require consideration of marital fault, disposition of the marital homestead requires such consideration. *Charles*, 788 F.2d at 966 n.14 (citing other jurisdictions statutes akin to 33 V.I.C. § 2305(d), holding that marital fault is considered in disposing of the marital homestead); *see also Stridion v. Stridion*, 698 F.2d 204 (3d Cir. 1983). In disposing of the marital homestead in the instant case, this Court undertakes a thorough review of the circumstances surrounding the couple's lives, the properties of each respective spouse, and any culpable conduct.

Defendant testified that plaintiff engaged in extra-marital affairs during their marriage. Plaintiff does not dispute defendant's allegation, but offers lack of consortium during defendant's lengthy residence in New Jersey as perhaps extenuating circumstances for his adultery. Plaintiff's argument is unpersuasive, and we find his adulterous conduct an important factor in ending the marriage. Although mindful of plaintiff's extra-marital relations, the Court is not unmindful of plaintiff's overall positive spousal treatment of defendant. Testimony by the parties reveal that plaintiff has always provided support to defendant, both financially and emotionally. We note also that he has defrayed the costs of her off-island medical treatements. Finally, allegations of emotional and physical abuse by defendant is inconclusive. Thus, based on the evidence presented, plaintiff's sole contributory fault here is his extra-marital affair.

The "equity of the case" does not end at consideration of plaintiff's adulterous conduct. We also consider defendant's on-going construction of her new home, and her refusal to inform plaintiff of the proceeds from the sale of the LBJ home, a property that falls squarely within the definition of "marital property." Moreover, due consideration is given to the advanced ages of the parties, and the current dilapidated living conditions in which plaintiff currently lives in.

---

conforms to our prior observations that the jurisdiction of Virgin Islands divorce courts, while based in statute, is considered equitable in nature.

*Charles*, 788 F.2d at 966.

■ Last but not least, defendant's contention that her LBJ home is not a marital asset, thus denying plaintiff any interest in it, is simply without merit. Thus, we deny the merits of defendant's argument that this Court should not consider the sale of the LBJ home, and her subsequent construction of a new home, in our disposition of the marital homestead; as well as in future determinations of alimony and equitable distribution of plaintiff's pension fund. To disregard a home that the parties once lived in and participated in its expansion is contrary to principles of equity as mandated in 33 V.I.C. § 2305(d).

Having considered the foregoing factors, we find that a total of a seven (7) year life estate in the marital homestead — four (4) years that defendant is entitled to as a result of her marriage to plaintiff, and three (3) additional years as a result of plaintiff's adulterous conduct — a reasonable and fair disposition of the marital homestead. In sum, an award of a seven (7) year life-estate in the marital homestead, with a reversionary interest in the plaintiff, is sufficient to provide defendant with comfortable living accommodations, and ample time to complete her future home.

*B. Equitable Distribution of Plaintiff's Retirement Fund*

1. Plaintiff's Pension Plan is Mixed Property: Separate & Marital

The next issue presented is the division of plaintiff's pension plan. Whether an employee-spouse's retirement benefits is personal marital property subject to equitable distribution upon divorce is an issue of novel impression in this jurisdiction, and thus requires careful study.

While defendant espouses the treatment of plaintiff's pension plan as marital property, plaintiff counters by arguing that since the Virgin Islands Code does not define it as marital property, and does not provide for any statutory authority to effect such division, the Court should decline from addressing the issue entirely, and thus preserve the entire pension plan to the plaintiff. We reject plaintiff's argument.

■ Although the term "marital property" finds no definition in the Virgin Islands Family Code ("Code"), nor does there exist specific statutory provisions regarding division of marital prop-

37

erty, 16 V.I.C. § 109 allows a divorce court to divide the marital estate by making "monetary award of alimony in gross," or by making awards of installment payments, etc. *Dyndul v. Dyndul*, 13 V.I. 376 (3rd Cir. 1976). Thus, the interpretation of 16 V.I.C. § 109 has been one of authorizing a divorce court to dispose of all the personal property of a marital estate according to the parties' circumstances.

However, because pension benefits are not expressly defined in the Virgin Islands statutes as marital property, we undertake an examination of other jurisdictions' treatment of retirement benefits in divorce matters. The issue of whether pension benefits are marital property has been addressed by virtually every jurisdiction. Accordingly, the case reporters of these jurisdictions are teeming with legal precedents, and accompanying judicial analysis, holding pension funds as marital property, to the extent acquired during marriage, entitling the non-employee spouse to an interest in the benefits.[9]

In Stevenson v. Stevenson, 511 A.2d 961, 965 (R.I. 1986), the Rhode Island Supreme Court rationalized:

"To the extent earned during the marriage, the [pension] benefits represent compensation for marital effort and are substitutes for current earnings which would have increased the marital standard of living or would have been converted into other assets divisible at dissolution. Subjecting the benefits to division is just, because in most cases the retirement benefits constitute the most valuable asset the couple has acquired and they both have relied upon their pension payments for security in their older years."

---

[9] *See Rice v. Rice*, 757 P.2d 60, 61 (holding that to the extent retirement benefits have been earned during the marriage, they constitute marital assets and are subject to equitable distribution); *In re Marriage of Oler*, 451 N.W.2d 9, 11 (Iowa App. 1989) (noting that pension benefits including Iowa Public Employees Retirement System benefits, are treated as marital property and are subject to equitable distribution); *Davolt v. Davolt*, 764 S.W.2d 497, 499 (Mo. App. 1989) (holding that pension benefits earned during the marriage must be considered part of the marital property subject to division in marital dissolution proceedings); *Olson v. Olson*, 445 N.W.2d 1, 11 (N.D. 1989) (concluding that pension or retirement benefits accumulated during the marriage are marital property divisible at divorce). The legal rationales underlying the inclusion of pension benefits as marital property are numerous and consistent.

*Id.* at 965 (*citing* 3 RUTKIN, FAMILY LAW AND PRACTICE, § 37.07[1] at 37-81 (1985).

Other jurisdictions, notably those that comprise the Third Federal Circuit, have also been consistent with the foregoing theme. "The right to receive monies in the future is unquestionably . . . an economic resource subject to equitable distribution based on proper computation of its present dollar value." *Kikkert v. Kikkert*, 177 N.J. Super. 471, 475, 427 A.2d 76, 78 (N.J. Super. Ct. App. Div. 1981) (citing *Kruger v. Kruger*, 73 N.J. 464, 468, 375 A.2d 659, 662 (1977)), aff'd, 88 N.J. 4, 438 A.2d 317 (N.J. 1981)) Furthermore, whether a retirement fund is subject to distribution "does not turn on whether the spouse can presently use or control it, or on whether the resource can be given a present dollar value . .`. but on whether a right to the benefit or asset has accrued in whole or in part during the marriage, to the extent that the right has so accrued it is subject to equitable distribution." *Woodward v. Woodward*, 656 P.2d 431, 432-33 (Utah 1982). *See e.g., In re Grubb*, 745 P.2d 661, 665 (Colo. 1987) (holding that an employee's right derives from his contract of employment, and thus is not a mere expectancy but, rather, is an enforceable contractual right.; *In re Brown*, 544 P.2d 561 (Cal. 1976) (concluding the employee's right to retirement benefits is a contractual right, derived from the terms of the employment contract). Apparently, the foregoing courts have equated pension plans to legally enforceable contracts, thereby holding that expectory interests created by a contract is identical to the benefits to be received under a pension plan.

In New York, the Court in *Majausakas v. Majauskas*, 463 N.E.2d 15 (N.Y. 1984) stated "to the extent that they [retirement funds, pensions] result from employment time after marriage and before commencement of a matrimonial action, they are contract rights of value, received in lieu of higher compensation which would otherwise have enhanced either marital assets or the marital standard of living and, therefore, are marital property." *Id.; see also Broadhead v. Broadhead* 737 P.2d 731 (Wyo. 1987).

In Colorado, *In re Marriage of Grubb*, 745 P.2d 661 (Colo. 1987), the Colorado supreme court observed that "retirement benefits, far from being a mere gratuity deriving from the employer's beneficence, are nothing less than a form of deferred compensation —

that is, they are consideration for past services performed by the employee and constitute part of the compensation earned by the employee." *Id.* at 664. Last but not least, the Ohio supreme court held "when considering the pension or retirement fund, the trial court must obtain a result which will preserve the asset so that each party can procure the most benefit." *Hoyt v. Hoyt*, 559 N.E.2d 1292 (Ohio 1990). Instrumental in the foregoing holding is the need to evaluate the parties' "overall financial situation, whether a direct division or some other alternative, would be most appropriate to preserve the pension or retirement benefit" to maximize the limited funds in such pension plans. *Id.*

■  Drawing upon the tremendous statutory and case law of other jurisdictions holding pension funds as marital property, we believe, in the Virgin Islands, that a pension fund is also marital personal property, subject to claim by the other spouse upon divorce. Having answered the question of whether a pension plan is marital property, to the extent earned during marriage, we now must determine what percentage or share of the benefits defendant is entitled to.

## 2. Equitable Distribution of Plaintiff's Pension Fund

Once it is determined that a property is marital, or a portion thereof is marital, the doctrine of equitable distribution is applied to effectuate a fair and just division of the property between the parties. As its name states, equitable distribution does not necessarily mean "equal," only "equitable." Moreover, in applying the foregoing doctrine, this Court is always guided by the concept of disentanglement of the parties' economic partnership to effect finality of the marriage, and to reduce the risk of one spouse becoming dependent upon the other in the future.[10]

In determining what percentage or share defendant is entitled to from plaintiff's pension fund, we are guided by two methods, utilized by most jurisdictions, to effect equitable distribution of a plaintiff's pension benefits.[11]

---

[10] *See Hoyt v. Hoyt*, 559 N.E.2d 1292 (Ohio 1990).

[11] "Long-term and deferred sharing of financial interests are obviously too susceptible to continued strife and hostility, circumstances which our courts traditionally strive to

The first method, the present value method, presumes the designation of a present value on the retirement plan, as of the date of marital dissolution, through the use of an actuarial table to determine the life expectancy of the employee-spouse, by evaluating the circumstances on a case-by-case basis, and by considering the probability that the pension recipient will eventually exercise his or her rights under the retirement plan. *See Weir v. Weir*, 413 A.2d 638 (N.J. Super. Ct. Ch. Div. 1980). Moreover, this method further requires the Court to place values regarding mortality and the amount of retirement pay the employee-spouse will be entitled to upon retirement. Accordingly, the utility of this method is appropriate in cases where the "risks of total forfeiture of the pension rights are so remote that it would be appropriate to fix a present value and distribute a portion thereof to the non-pensioner spouse." *Weir*, 413 A.2d at 641.

The second method, the deferred distribution method, calculates the non-employee spouse's interest in the pension fund to the extent acquired during the marriage and provide for its distribution on a percentage basis, along with incremental value, at the time the benefits become available to the employee spouse. The goal underlying this method alleviates the risk of forfeiture if the employee-spouse were to die prior to retirement. Further, this method reserves in the non-employee spouse the right to share in the pension benefits upon maturity. *See Flynn v. Flynn*, 491 A.2d 156, 161 (Pa. Super. Ct. 1985). Lastly, the deferred distribution method dispenses with the requirement to assign a present value on the entire pension benefits, thereby allowing the court to simply calculate the appropriate percentage to which the non-employee-spouse will be entitled to when payments under the plan commence. In sum, this method equally apportions any risks of

---

avoid to the greatest extent possible. This goal may be best accomplished, if a present value of the pension plan is ascertainable, by fixing the other spouse's share thereof, as adjusted for all appropriate considerations, including the length of time the pensioner must survive to enjoy its benefits, to be satisfied out of other assets leaving all pension benefits to the employee himself.

On the other hand, where other assets for equitable distribution are inadequate or lacking altogether, or where no present value can be established and the parties are unable to reach agreement, resort must be had to a form of deferred distribution based upon fixed percentages.

*Id.* at 478, 427 A.2d at 79-80.

forfeiture upon both parties to the dissolution proceeding. *See Weir v. Weir*, 413 A.2d 638 (N.J. Super. Ct. Ch. Div. 1980); *Copeland v. Copeland*, 575 P.2d 99 (N.M. 1978); *Flynn*, 491 A.2d at 161.

Turning to the facts of this case, we find no evidence of the present value of plaintiff's pension plan.[12] The Court notes that the sole expert witness introduced by the defendant was unacceptably lacking in preparation, made assumptions involving hypothetical numbers and calculations that did not necessarily reflect the proper vesting and maturity status of plaintiff's pension benefits, and the true net monthly pension proceeds. Moreover, and importantly, no evidence was offered as to when the "hazardous" and "non-hazardous" classifications were instituted by GERS, and for how long plaintiff was in the "hazardous" or "non-hazardous" category before and after marriage.

Moreover, the GERS system does not allow a pension recipient to elect a lump-sum payment, thereby mandatorily requiring the recipient to elect installment payments. This requirement affords the employee-spouse the option of determining when to commence distribution of pension benefits. Thus, we are cognizant of the risk that plaintiff may not retire this year or die before retirement, all of which would subject the pension plan to forfeiture. Thus, the Court finds the second method, the deferred distribution method, applicable under the factual posture of this case to determine defendant's interest in plaintiff's pension fund. However, since the deferred distribution method requires actual distribution of pension benefits to the employee-spouse, before any determinations can be made regarding the non-employee spouse's share, this Court will reserve for future hearing the disposition of plaintiff's pension plan.

*D. Alimony*

1. Background

The judicial considerations underlying alimony determination

---

[12] Neither party submitted any evidence of the present value of plaintiff's pension fund. Expert testimony introduced by the defendant failed to inform the Court of the present value of plaintiff's total pension, which would have been of essential utility to the Court's determination of the proper amount to be distributed to the defendant from plaintiff's monthly pension checks.

are well settled in this jurisdiction. In 1973, the amendment of 16 V.I.C. § 109 shifted the law of alimony from a fault-based system to a more contemporary need-of-the-spouse scheme. 16 V.I.C. § 109, as amended April 24, 1973, provides in pertinent part:

> Whenever a marriage is declared void or dissolved the court may, *without regard to* any determination that the breakdown of the marriage was the *fault* of one party or the other, further decree:

> (3) for the recovery for a party determined to be in need thereof an amount of money in gross or in installments, as may be necessary for the support and maintenance of such party;

16 V.I.C. § 109(3) (emphasis supplied).

■ The language of 16 V.I.C. § 109(3) has undergone numerous judicial interpretations, which hold that in determining alimony, a court is vested with broad discretion in evaluating the operative factors inherent in alimony awards; which include, but are not limited, to the couple's personal income, needs, financial ability, checking account balances, employment, living expenses, and debts and obligations outstanding. *Viles,* 5 V.I. at 334, 250 F.Supp. at 211. *See Viles v. Viles,* 5 V.I. 334, 250 F. Supp. 211 (D.C.V.I. 1963); *Del Pescho v. Del Pescho* 6 V.I. 440, 386 F.2d 835 (3rd Cir. 1966); *Poe v. Poe,* 7 V.I. 30, 409 F.2d 40 (3rd Cir. 1969); *Barrows v. Barrows,* 11 V.I. 129 (3rd Cir. 1973). Further, the Court must consider the overall circumstances surrounding the parties; in the instant matter, defendant's necessities and plaintiff's financial ability, the physical condition of the parties, the nature of their life together, and defendant's independence and ability to earn her own way. *See Alleyne v. Alleyne,* 18 V.I. 544 (D.C.V.I 1981).

Alimony awards are based on a careful evaluation of each spouse's financial ability. Where the Court is unable to determine the ability of the payor spouse due to lack of evidence as to his or her financial worth, income, etc., the Court will decline to make a permanent spousal maintenance award. Based on the scant evidence regarding the proper valuation of the pension fund, and the inextricable nature in which the issue of alimony is joined with the

issue of equitable distribution of plaintiff's pension benefits, the Court shall refrain at this point from determining permanent alimony. Accordingly, the Court finds it necessary to reserve the issue of permanent alimony until such time as after a hearing on the value of plaintiff's pension benefits.

Not unmindful of defendant's need for sustenance, defendant shall remain entitled to the current temporary alimony payments being received from plaintiff, until such time as permanent alimony is properly determined.

*D. Attorney's Fees*

■ Finally, defendant requests attorney's fees in the amount of $2,000, on the basis that the circumstances of this case warrant entitlement to attorney's fees. Inherent in each request for attorney's fees are two issues: whether attorney's fees are warranted based on the facts of the case, and if so, what amount of attorney's fees is the requesting party entitled to. Since the Court answers the first question in the negative, we decline to address the second issue.

The Court's discretion in awarding attorney's fees is based on 5 V.I.C. § 541(b), and 16 V.I.C. § 108, in divorce matters. *See Poe v. Poe*, 7 V.I. 30, 409 F.2d 40 (3rd Cir. 1969). Absent abusive or dilatory conduct, or meritless claims brought for purposes of harassment, by a non-prevailing party in prosecuting an action, this Court is not inclined to award attorney's fees. In American jurisprudence the parties are responsible for their respective attorney's fees, unless otherwise provided for by statute or common law.

While the aforementioned view is generally applicable to civil matters, another dimension is added to divorce proceedings. This Court recognizes the legislative intent behind 16 V.I.C. § 108(1); as in certain divorce cases the financial disparity between the spouses may stifle one spouse's ability to properly prosecute a divorce case. An example of such case appears in *Poe v. Poe*, 7 V.I. 30, 409 F.2d 40 (3rd Cir. 1969). However, the facts underlying *Poe* are in disparity with the instant facts. Unlike in *Poe*, where the husband was significantly wealthier than his wife and had ample income, here, both defendant and plaintiff are financially constrained, and are soon reaching retirement age. Furthermore, as this Court has

awarded the wife a seven (7) year term life-estate in the marital homestead, with the potential for an equitable distribution of plaintiff's pension benefits, decline to award defendant any attorney's fees.

## IV. Conclusion

Unlike issues of alimony, child support, and equitable distribution of personal marital property, disposition of the marital homestead requires consideration of marital fault. Here, plaintiff's culpable fault is his extra-marital relations. Accordingly, we find that a seven (7) year term life estate in the marital homestead to be a fair and equitable award to the defendant.

Turning to the issues of alimony and the equitable distribution, we find the evidence at this point insufficient for the Court to make any proper awards of spousal sustenance and equitable distribution of plaintiff's pension. Accordingly, the foregoing two issues shall be reserved for future hearing, at which time counsel for the parties will submit competent evidence regarding the value and structure of plaintiff's pension plan.

Finally, defendant's request for attorney's fees is denied, as we do not find any culpable or dilatory conduct by the plaintiff.

### ORDER

This matter appears before the Court for disposition of the marital estate of the parties in the above entitled divorce action, and based on the reasons set forth in the accompanying Memorandum Opinion, it is hereby

ORDERED that the Marital Homestead, located at 145 Sion Farm, shall be disposed of according to the following terms:

1. That defendant, Ayres Fuentes, is entitled to a SEVEN (7) year life-estate, to commence from the date of the last hearing, November 22, 1996.

2. That defendant refrain from any activity that shall in any manner reduce the value or result in waste to the marital homestead.

3. That the following Order be recorded in the Office of the Recorder of Deeds.

4. That plaintiff, Felipe Fuentes, is entitled to a *Revisionary Interest* in the estate, entitling him to a Fee Simple Absolute upon termination of defendant's life estate interest.

ORDERED that temporary alimony to be paid by plaintiff shall continue, until such time as a determination of permanent alimony is made.

ORDERED that determination of the parties' respective interest in plaintiff's pension plan shall be reserved until such time as the Court obtains competent and sufficient evidence regarding the provisions of the pension plan, by way of supplemental briefs from the parties' attorneys.

ORDERED that defendant's request for attorney's fees is DE-NIED.

ORDERED that copies of this Order shall be served upon the parties.

DONE AND SO ORDERED this 8th Day of September, 1997.