**JOSEPH PETROHAN, Plaintiff**

**v.**

**BARBARA PETROHAN, Defendant**

SX-03-DI-00145

Superior Court of the Virgin Islands

Division of St. Croix

March 1, 2007

EDWARD L. BARRY, ESQ., Hamm & Barry, St. Croix, U.S. Virgin Islands, *Counsel for Plaintiff.*

H.A. CURT OTTO, ESQ., St. Croix, U.S. Virgin Islands, *Counsel for Defendant.*

STEELE, *Judge*

## MEMORANDUM OPINION

(March 1, 2007)

### I. INTRODUCTION

THIS MATTER comes before the Court on the Motion of Plaintiff, Joseph Petrohan [hereinafter "Joseph" or "Plaintiff"].[1] Plaintiff moves this Court to find, *in limine,* that "no proof or evidence of fault shall be relevant and/or admissible" to the division of the marital home. More specifically, he asks the Court to find that no marital homestead, as defined in 33 V.I. CODE ANN. § 2305(a) (1962) has ever existed at 72-R Estate Clairmont. Alternatively, if a marital homestead does exist, Plaintiff prays that this Court find the same was abandoned by Defendant, Barbara Petrohan [hereinafter "Barbara" or "Defendant"] according to 33 V.I. CODE ANN. § 2305(d).

For the reasons that follow, the Court holds that a marital homestead exists at 72-R Estate Clairmont as defined in 33 V.I. CODE ANN. § 2305(a). The Court finds further that Defendant has not abandoned the marital homestead within the meaning of 33 V.I. CODE ANN. § 2305(d).

### II. FACTUAL AND PROCEDURAL HISTORY

Barbara and Joseph Petrohan were married on or about October 1, 1993 in Bethel, New York.[2] There are no children of the marital

---

[1] Note: Joseph Petrohan is the Plaintiff in the divorce action, SX-03-DI-145. Barbara Petrohan is the Plaintiff in the domestic violence action, SX-03-DV-177. Because the immediate motions were filed under the divorce action, Joseph is referred to as "Plaintiff" and Barbara as "Defendant" throughout the opinion.

[2] The parties dispute the date of their marriage. Joseph's complaint in the divorce proceeding alleges that they were wed on October 1, 1993. Barbara's answer contends

relationship. Joseph brought this action for divorce on the heels of a domestic violence complaint initiated by Barbara. Nearly four years have passed since the initial pleadings were filed in these matters.[3]

On the night of May 21, 2003, an altercation took place inside the marital home. According to Barbara's original pleading in the domestic violence action, Joseph threatened to kill Barbara if she did not leave the house immediately. She alleges that his threats came amidst a tirade of insults and profanity-laden speech in which he became increasingly angry and threatening. Barbara attempted to seclude herself away from Joseph within the house by avoiding him and ignoring his drunken demands that she leave or he would kill her. Joseph then called an acquaintance and angrily demanded that he remove her because he was going to kill her. The acquaintance arrived shortly thereafter and took Barbara to the Divi Resort Hotel where he provided her with lodging for two nights. This incident marks the last day the parties resided together in the marital home.

Barbara filed a domestic violence against Joseph on May 22, 2003 in the Superior Court of the Virgin Islands, Division of St. Croix. In her petition she alleged a history of threats, harassment and abuse. Barbara's complaint attests that Joseph had attacked and assaulted her roughly 18 months before the complaint, compelling her to leave the house and stay with friends for roughly two weeks. She further alleged that in the months leading up to the May 21st incident, Joseph had become increasingly threatening, got drunk on a nightly basis and was verbally abusive. *See* PETITION AND MOTION FOR TEMPORARY RESTRAINING ORDER at ¶ 6, *Barbara Petrohan v. Joseph Petrohan,* Fam. No. SX-03-DV-177 (V.I. 2003). She stated that Joseph had firearms in his possession which she feared he would use against her. Barbara further stated that the munitions, coupled with his drinking and increasingly violent disposition made her fear for her life. *See* AFFIDAVIT OF

---

that the parties were actually wed on October 2, 1993. Neither party has submitted documentation that sufficiently resolves this discrepancy.

[3] Multiple factors contribute to the delay in the resolution of this matter. Barbara has changed counsel multiple times and Joseph has been receiving cancer treatment off-island. These factors have contributed significantly to the need to continue proceedings, reschedule hearings and extend deadlines. They explain, in part, why no disposition has been made of the property, to date.

BARBARA PETROHAN dated May 25, 2003, *Barbara Petrohan v. Joseph Petrohan*, Fam. No. SX-03-DV-177 (V.I. 2003)

On June 16, 2003, a hearing was held on Barbara's domestic violence complaint pursuant to 16 V.I. CODE ANN. § 97 (1984, amended 1993). Both parties were represented by counsel. Following the hearing, Judge Edgar Ross entered a Permanent Restraining Order ("PRO") against Joseph. He found that Barbara qualified as a protected person under the Domestic Violence Chapter of the Virgin Islands Code. *See* 16 V.I. CODE ANN. §§ 90-99b (1984); *see also* PERMANENT RESTRAINING ORDER dated June 17, 2003, *Barbara Petrohan v. Joseph Petrohan*, Fam. No. SX-03-DV-177 (V.I. 2003). In the following year there were several complaints made by both parties regarding the rightful return of personal property and Barbara claimed additional threats and harassment from Joseph. Judge Patricia Steele granted Barbara's first request for an extension of the PRO beyond the original one-year period in 2004. In 2005, Judge Steele denied a request for a second renewal of the same order. The PRO expired on June 16, 2005.

Joseph initiated the immediate divorce action in the Family Division of the Superior Court on July 15, 2003. A Decree of Divorce was issued on October 28, 2005. The division of the marital homestead was not included in the Decree, however, as both parties had yet to conclude discovery on the matter.

Barbara was granted exclusive possession of the marital residence in the PRO. Following the expiration of the PRO, Joseph petitioned the Court to grant him possession of the marital home. That petition was denied in December 2005. Joseph filed the Motion at bar in March 2006.

## III. DISCUSSION

Before this Court are two issues: (1) whether the property located at 72-R Estate Clairmont ever qualified as a marital homestead as defined in 33 V.I. CODE ANN. § 2305(a); and, if so, (2) whether Defendant has abandoned the marital homestead, terminating her claim to all the rights and protections afforded property held under the homestead exemption. Analysis of the second issue is contingent on the outcome of the first.

## A. 72-R Estate Clairmont Qualifies as Marital Homestead Property Under 33 V.I. CODE ANN. § 2305(a).

The power of a Virgin Islands divorce court to distribute marital assets has been prohibited in the absence of express statutory authorization. *See Dyndul v. Dyndul*, 541 F.2d 132, 13 V.I. 376 (3d Cir. 1976). Title 33 V.I. Code § 2305(d) provides that a divorce court "shall make disposition of property of the homestead in accordance with the equity of the case." *See also Dyndul*, 541 F.2d at 134. Courts have held this provision to impart jurisdiction upon the divorce court to make distributions related to the marital homestead. *See Charles v. Charles*, 788 F.2d 960, 965 (3d Cir. 1986); *Todman v. Todman*, 571 F.2d 149, 150, 15 V.I. 518 (3d Cir. 1978); *Dyndul*, 541 F.2d at 134; *Knowles v. Knowles*, 354 F. Supp. 239, 9 V.I. 360 (1973). The phrase "equity of the case" has been interpreted to permit consideration of the marital fault of each party in the disposition of the marital homestead. *See Fuentes v. Fuentes*, 38 V.I. 29, 36 (1997); *Charles*, 788 F.2d at 965-66. Attempts by divorce courts to distribute property other than the marital homestead have been found to be contrary to law. *See Dyndul*, 541 F.2d at 133. Accordingly, this Court has jurisdiction to make disposition of the property located at 72-R Estate Clairmont based upon the equities of the case if and only if such property qualifies as a marital homestead.

Plaintiff's counsel argues that the plain language of 33 V.I. CODE ANN. § 2305(a) is sufficient for finding that no marital homestead has ever existed at 72-R Estate Clairmont. Specifically, Plaintiff's counsel claims that the words "actually occupied by," as used in the statute, amount to clear, unambiguous language. He contends that neither party currently resides at the residence on a full-time basis and therefore no homestead can be said to exist there. Title 33 V.I. CODE ANN. § 2305(a) provides:

> For the purposes of this section *a homestead shall constitute the abode including land and building, owned by, and actually occupied by, a person, or by members of his family* free of rental charges. Rental of any portion of the homestead for any purpose shall not adversely affect the homestead protection provided for in subsection (b) of this section. (Emphasis supplied)

Missing from this description of the marital homestead is a critical temporal element. If taken to mean "occupancy at any given moment," it would appear that no homestead exists today as it is undisputed that neither party currently resides at the marital home on a regular basis. The first question for the Court, then, is at what point does homestead status attach? The Court turns first to the statute for guidance as to the necessary temporal cue. Section 2305(d) provides:

> The homestead protection and exemption provided in this section shall continue to attach to the property after the death of the owner thereof, and shall inure to the favor of the surviving spouse while the latter continues to occupy the said homestead, and after the death of both spouses, to the favor of their children until the youngest surviving of these shall have attained majority. In case either spouse shall abandon the home, the homestead protection and exemption shall continue in favor of the spouse who occupies the property as a dwelling; and in the case of a divorce, the court which grants it shall make disposition of the homestead in accordance with the equity of the case.

This provision provides for situations in which homestead status both endures and ceases to exist. Thus, impliedly, homestead status attaches at some point prior to incidents of death, abandonment and divorce. In order to give § 2305(d) any meaning we must necessarily know if a homestead exists prior to each of these events. Consequently, we know that if a marital homestead existed *at all,* it must necessarily have been prior to the divorce. To determine the *specific temporal element* of this analysis, the Court turns next to precedent. This matter is settled by existing Virgin Islands case law.

In order for a marital homestead to be subject to a divorce court's disposal authority, three requirements must be met. *See Roberts v. Roberts,* 26 V.I. 92 (1991). The first requirement is that any real property, as well as the dwellings or buildings upon it, must be the place where the party or parties actually live. Secondly, the land in question must be owned by at least one, if not both, of the marital parties. Finally, the buildings upon the land for which homestead status is claimed must also be owned by at least one of the parties to the marriage. *See id.* at 96. The second and third prongs of this test are readily met: Plaintiff and Defendant held land at 72-R Estate Clairmont and the house on it as

tenants by the entirety from the time of acquisition to the time of their divorce. Consequently, the Court foregoes discussion of these factors of the *Roberts* test, deeming them satisfied. Thus, any finding of a marital homestead hinges upon satisfaction of the first prong of the test.

As stated in *Roberts,* the first prong of the test requires that the property in question be the place where "the party or parties actually live." *Id.* The *Roberts* Court cites, mid-sentence, the holding in *Kirby v. Kirby* as its source for the first prong of the test. *See id.*; *see also Kirby v. Kirby,* 14 V.I. 601 (1978).

In *Kirby,* the parties to the divorce jointly owned two separate pieces of property. *See Kirby,* 14 V.I. at 605. The first property in *Kirby,* located in Sally's Fancy, was the marital home during the marriage. A second property located in Golden Rock was held as tenants by the entirety but never occupied by the parties during the marriage. The parties in *Kirby* asked the divorce court to divide the Golden Rock property. The Court refused to make any disposition, noting that it was only empowered to make dispositions as to the marital homestead. The *Kirby* court held that the Golden Rock property was not a marital homestead "since it was not the marital abode *at the time of the separation of the parties." Id.* Consequently, the *Kirby* court determined that the existence of a marital homestead in a divorce action is determined by looking at the relationship between the parties and their property at the time of separation. The ruling in *Roberts* left the *Kirby* holding unchanged, finding the parties in *Roberts* had satisfied the first prong of the test, although later finding no marital homestead existed because the other prongs of the test were not satisfied. *See* 26 V.I. at 97. Thus, in completing the *Roberts* test analysis, the Court must look to where the parties "actually live[d]" at the time of separation to determine whether 72-R Estate Clairmont qualifies as a marital homestead under § 2305(a). *See id.* at 96.

Both parties in the matter at bar actually lived in the marital home at the time of separation. According to Defendant's Temporary Restraining Order request on May 22, 2003, both parties resided at 72-R Estate Clairmont at the time of the incident spurning the domestic violence action. Plaintiff has never disputed that he and Defendant actually lived in the marital home at 72-R Estate Clairmont or that both of them lived there up until the point of separation.

 Plaintiff contends that in addition to the three factors outlined by the *Roberts* court, the residence must be "habitable" or "completed." He argues that 72-R Estate Clairmont is incomplete according to appraiser's reports and therefore cannot constitute a homestead. The court is not persuaded by this argument. None of the cases in Plaintiff's legal brief discuss the need for a residence to be "habitable" in order for it to qualify as a marital homestead. That construction of the dwelling might not have been complete is irrelevant to the Court's analysis. Many people construct additions while remaining in the residence or move into homes that are incomplete. This does not deprive them of their right to claim marital homestead status. Moreover, § 2305(a) does not require a finding of "habitability" in order to qualify for marital homestead exemption status. The Court is unwilling to create a requirement clearly outside the intent of the Legislature. The fact that both parties *actually resided at 72-R Estate Clairmont at the time of separation and owned the land and dwelling thereon remain the only relevant factors for analysis.* Therefore, the parties possessed a marital homestead located at 72-R Estate Clairmont at the time of their separation and this Court has jurisdiction to dispose of it according to the equities of the case.

## B. Defendant Has Not Abandoned the Marital Homestead.

Because a marital homestead exists at 72-R Estate Clairmont, the Court reaches the second argument raised in Plaintiff's Motion. Plaintiff argues that if a marital homestead exists, Defendant's conduct since the divorce constitutes abandonment under Title 33 V.I. CODE ANN. § 2305(d). After review of the statute the Court finds that the possibility of abandonment under § 2305(d) is precluded by the fact that Plaintiff and Defendant are parties to an action for divorce.

Plaintiff suggests that even if a marital homestead exists, Defendant's conduct constitutes abandonment of the same. He argues that Defendant's conduct constitutes abandonment of the marital homestead. In particular, he points to the fact that Defendant has spent the majority of her time in the past 18-24 months in Florida where she does primarily contract work. Plaintiff cites the part of § 2305(d) which says: "[i]n case either spouse shall abandon the home, the homestead protection and exemption shall continue in favor of the spouse who occupies the property as a dwelling[.]" He argues that Defendant's conduct in relocating to Florida constitutes abandonment and therefore marital

homestead status is lost. *See* Title 33 V.I. CODE ANN. § 2305(d). Plaintiff's argument ignores the relevant language of the statute. As the Court in *Todman* noted:

> The language of section 2305(d) is straightforward and not reasonably susceptible on its face to any interpretation other than that the divorce court has power to dispose of the homestead. This view is reinforced by comparing the language of that part of the section dealing with divorce with the language of the remainder of section 2305(d). **The section deals with three contingencies which might affect the legal relationships of the parties to a marriage to a homestead;** first the death of the titular owner of the property; second, abandonment of the premises by either of the spouses; and third, divorce. **As to both death and abandonment, the language addresses continuation of the "homestead protection and exemption";** <u>as to divorce the section specifically empowers the court to *dispose* of the "homestead."</u> *See* 571 F.2d at 152. (Emphasis supplied)

There are three situations in which the marital homestead status is subject to § 2305(d): death, abandonment and divorce. Unlike the case of divorce, the statutory phrases concerning death and abandonment provide language that deals with the *duration* of the homestead status. In the case of death, the homestead endures in favor of a surviving spouse and then the youngest surviving child until he or she reaches majority, so long as they continue to reside at the homestead. Likewise, in the event of abandonment, the exemption shall continue in favor of the remaining spouse who continues to occupy the dwelling. In contrast, the phrase discussing divorce vests the Court with *power to dispose* of the property in accordance with the equity of the case. Thus, the duration of the homestead in the case of divorce is determined solely by the Court and in accordance with the equity of the case.

Being that the statute prescribes remedies for death, abandonment and divorce, the question becomes whether a party can abandon a marital homestead under the abandonment provision in § 2305(d) after it is subject to the Court's power to dispose under § 2305(d). This Court holds that one cannot. Abandonment is an alternative to divorce. A person who abandons a homestead is abandoning a relationship and the marital property at the same time. As § 2305(d) states: "the homestead

253

protection and exemption shall continue in favor of the spouse who occupies the property as a dwelling." The abandonment of the property is incidental to the abandonment of the marital partner. The statute protects the abandoned partner by permitting the homestead exemption protections to endure in favor of the abandoned spouse so long as they continue to live in the homestead. After a divorce action is filed, the issue of subsequent abandonment is moot as the parties have already chosen how to dissolve their relationship.

■ Accordingly, the Court holds that from the time a divorce action commences until it is adjudicated or dismissed, a marital homestead is subject to the Court's disposal discretion and not the abandonment language in § 2305(d), provided that the divorce action was not *preceded* by an act of abandonment which necessarily terminated the homestead interest of the abandoning spouse. Any argument that a party to a divorce action has "abandoned" a marital homestead property *subsequent* to the commencement of a divorce proceeding is without merit. This holding is supported by case law and public policy.

In *Charles,* the Court of Appeals for the Third Circuit included a footnote:

> ... Albert also argues that the court was not authorized to dispose of the homestead to the spouse who had "abandoned" it. He relies upon V.I. CODE ANN. tit. 33 § 2305(d), which provides that "[i]n case either spouse shall abandon the home, the homestead protection shall continue in favor of the spouse who occupies the property as a dwelling." However, § 2305(d) provides further that "in the case of *divorce,* the court which grants it shall make a disposition of the homestead in accordance with the equity of the case." (emphasis [in original]) In [*Todman*], we recognized that "[a]s to both death and abandonment [§ 2305(d)] addresses [only] *continuation* of the 'homestead protection and exemption'; as to divorce, the section specifically empowers the court to *dispose* of the 'homestead'." (emphasis in original) (footnote omitted) *Id.* at 152. **Thus, it is abundantly clear that in the event of divorce, <u>as opposed to</u> abandonment, the marital homestead is to be disposed of in accordance with the "equity of the case," and not according to which spouse remains in the marital dwelling after**

**the divorce is filed.** ... *See* 788 F.2d at 967 n.19. (Emphasis supplied)

The *Charles* Court clearly saw divorce and abandonment as a matter of "either or." If the parties had filed for divorce, the matter was to be determined by the Court while balancing the equities of the case. Abandonment, on the other hand, is an act that happens at some point during a marriage but prior to a divorce. Therefore, whether either party, if any, remains in the homestead after the filing of a divorce action is wholly irrelevant to the *existence* of the homestead itself. Parties to a divorce may relocate or even remarry before a homestead can be distributed by a divorce court. Thus, as the Court held in *Charles,* the issue of abandonment here is moot, as the divorce process was engaged prior to any claims of abandonment.

Additionally, the Legislature took affirmative steps to establish public policy for Title 33 V.I. CODE ANN. § 2305. This statement holds, in part, that:

> The public policy is hereby established that the property where the homestead is constituted shall enjoy ample protection by law, not only in regard to freedom from attachment and foreclosure by private persons, but also by the Government itself, which has a justifiable interest in seeing that citizens keep their homesteads and enjoy proper housing. 1962 V.I. SESS. LAWS 834.

Given this purpose, the Court is obligated to take actions within its authority to preserve the homestead. Plaintiff contends that nobody will be "hurt" by finding that no marital homestead exists. The Court disagrees with this perspective. In light of the public policy statement detailed above, the Court cares to know *what benefit is conferred* upon the parties through the rescission or renunciation of homestead status. The answer, simply, is none. Keeping marital homestead status lowers tax liability and protects the property against lenders and other creditors. This strengthens the parties against attachment and foreclosure, issues explicitly outlined as areas of concern to the Legislature. Accordingly, so long as one party to the divorce requests that homestead status endure, this Court will not act to remove it unless a prevailing beneficial interest exists.

Abandonment of a marital homestead must necessarily occur prior to both death and divorce. When a divorce action commences without a prior finding of abandonment, the Court has the broad discretion to dispose of the property in accordance with the equities of the case. *See* Title 33 V.I. CODE ANN. § 2305(d); *see also Roberts*, 26 V.I. 92. In light of this holding, Plaintiff's claim that Defendant has abandoned the homestead is simply without merit. A homestead existed at the time of separation and was preserved as such by the commencement of the divorce action.

A separate Order shall issue ordering the same.